MARGARET R. PEMBROKE *vs.* CAMBRIDGE ELECTRIC LIGHT
COMPANY.

Middlesex.   November 15, 18, 1907. — February 28, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, & BRALEY, JJ.

*Negligence,* Employers' liability.

When an experienced lineman in the employ of an electric light company is work-
ing, as one of a gang of men under the direction of a superintendent of the
company, in substituting new electric wires on the poles of the company for
others which are dangerous for want of proper insulation, the workmen being
aware of the cause of the replacement and knowing also that while the recon-
struction is in progress the company will supply electricity for lighting through
the old wires upon the poles on which they are working, it is not the duty of
the company, or of its superintendent in charge of the work, to warn or instruct
such a lineman in regard to the perils of his employment, which he knows as
well as his employer or the superintendent, especially where the lineman is
permitted to perform the work in his own way with an opportunity for unre-
stricted observation of his dangerous environment.

TORT under R. L. c. 106, §§ 73, 74, by the widow of Charles
W. R. Pembroke, to recover for the instantaneous death of her
husband while in the defendant's employ as a lineman.   Writ
dated November 15, 1905.

In the Superior Court the case was tried before *Pierce,* J.   It
was admitted that the plaintiff was the widow of Pembroke, who
was instantly killed on August 28, 1905, while working upon a
wire belonging to the defendant, attached to a pole on Massa-
chusetts Avenue near Martin Street in Cambridge.   Notice of
the time, place and cause of the injury was given, and no ques-
tion was raised as to the notice.   At the time of the injury the
deceased was about forty-five feet above the ground, standing
upon a cross arm on the pole, and was engaged in the work of
tying in a new wire upon a glass insulator which was attached to
a pin in the cross arm immediately above the one upon which
he was standing.   The cause of the accident is described in the
opinion.

At the close of the plaintiff's evidence, the defendant asked
the judge to rule that upon the evidence the plaintiff could
not recover.   The judge said, " I am inclined to think that this

condition was a condition which was obvious to all these line-
men at the time of their employment; consequently, I shall
direct a verdict for the defendant." He ordered a verdict for
the defendant; and the plaintiff alleged exceptions.

*C. Reno,* for the plaintiff.

*J. Lowell* and *J. A. Lowell,* for the defendant.

BRALEY, J. The plaintiff has no ground of exception to the
ruling made at the trial. By R. L. c. 106, §§ 71, 73, 74, under
which this action is brought, recovery is denied unless the death
of the employee is caused either by the negligence of the em-
ployer, or of a person for whose negligence the employer is
responsible. If the record is somewhat voluminous, the essen-
tial features relating to this question are easily distinguishable.
The electric wires of the defendant's system having become
dangerous for want of proper insulation, new wires were to be
substituted, and a gang of men, including the decedent, who
was an experienced lineman, were sent out to perform the work,
under the direction of a general foreman of the company. The
old wires when in position rested on cross arms of six pins each,
equally divided by the pole. Of these wires, the second in each
group was used to carry a current of electricity of sufficient
voltage to operate motors, while those remaining, consisting of
two on each side nearest the pole, and two at each end of the
cross arm, respectively designated as the "pole pin" and "end
pin wires," were used to supply electricity for running the
lights. If the current in the motor wires was not dangerous to
life, each of the lighting wires was charged with an alternating
current, sufficiently high to cause the death of those who might
come into contact with them. The pole and end pin wires on
the street side were left uncharged, but during the process of
reconstruction the corresponding wires on the other side of the
arm, where the decedent stood, were in operation while new
wires were being substituted. In the substitution, the new
wires after being raised were tied in with the old on the in-
sulators by the use of "short tie wires," and while doing this
work the plaintiff's husband stood on a second cross arm a little
more than two feet below the first. Before tying the end pin
wires, the motor wire had to be untied, and, after that had been
attached to the insulator, retied. It is manifest from the testi-

mony of his fellow workmen, that, having secured the pole and end pin wires, he then had to step from the lower, over the upper cross arm, to reach a position where he could retie the motor wire. While making the change, he apparently would have incurred no danger if the pole pin wire had been properly insulated. But about ten inches from the cross arm, and attached to this wire, over which a few turns had been taken, were the remains of a discontinued copper " tap wire," which had been cut off leaving a very short projecting end. On changing his position, he was obliged to step over the tap wire, which had become charged with the alternating current, when its end penetrated his body at the groin. It could have been inferred from the different descriptions of what followed, that from the shock he either fell upon the wires or instinctively to prevent falling almost simultaneously grasped one of them, making a short circuit through which the electricity passed, causing his death. It is further stated, that when the workmen began they all knew the cause of replacement and that, while reconstruction was in progress, the defendant would supply electricity for lighting through the pole and end pin wires in use at the time of the accident. The decedent, who was a practised and skilful workman, had been informed of these general conditions, and must have been aware of the danger. During readjustment, the arrangement of the various wires, the shifting from one position to another required while fastening them, the bare wire in proximity to his person alive with electricity, were not only clearly visible, but, in the light of his general knowledge, obvious. But if these conditions are uncontroverted, the plaintiff contends that they did not embrace the remains of the tap wire. The day, however, was clear, and, even if this wire originally bright had become oxidized, resembling in color the pole pin wire, yet, from where the decedent stood on the lower cross arm, it not only was unconcealed, but was immediately within his vision. Nor is this all. He was not hurried while tying the wires, but was permitted to perform the work in his own way, with an opportunity of unrestricted observation which the dangerous environment demanded. If generally the employer, or those who under the statute stand in his place, owes a duty to an employee to warn or instruct him as to abnormal

dangers, this duty is not violated, where from either the character of the work, or other sources, the employee is possessed of all the information which the employer could have furnished regarding such perils. Because of his previous knowledge, experience and means of ascertaining the obvious conditions under which his work must be performed, the decedent had been put in possession of all the elements of danger attendant upon his employment. The failure of the defendant, or of its foremen, who could have been found to have been entrusted with superintendence, to instruct the decedent, where for these reasons no instructions became necessary, furnished no evidence of the defendant's negligence; and a verdict in its favor was rightly ordered. *Meehan* v. *Holyoke Street Railway*, 186 Mass. 511, 513, 514, and cases cited. *Regan* v. *Lombard*, 192 Mass. 319, 323.

*Exceptions overruled.*