HUBER *v.* TWIN CITY GENERAL ELECTRIC CO.

1. EVIDENCE — MASTER AND SERVANT — ELECTRICITY — REPAIRS — DEFECTIVE INSULATION.

It was competent, in an action by a lineman for injuries caused by defective insulation, to show that a guy wire, of which plaintiff took hold, became charged on two previous occasions, that the defendant was notified of the situation and made repairs which were insufficient to obviate the alleged imperfect insulation.

2. MASTER AND SERVANT—DEGREE OF CARE.
   That defendant was contemplating an immediate alteration in
   . its entire construction did not change its duty to employés.

3. SAME.
   An electric power company, engaged in producing currents of
   high voltage, is charged with the duty towards its employés
   of exercising a very high degree of care because of the ex-
   tremely hazardous nature of the business.[1]

4. SAME—RISKS ASSUMED — INSULATION OF WIRES — ELECTRICITY.
   While a lineman was chargeable with the assumption of such
   risks as are incident to the business, and such as grow out of
   dangers that he knew, or in the exercise of due care should
   have known, he did not assume the risk of a danger as to
   which the employer had actual notice and neglected to warn
   the employé.

5. SAME—CONTRIBUTORY NEGLIGENCE.
   Whether he should have anticipated that a guy wire not usu-
   ally charged might conduct a charge of electricity from an
   adjacent high voltage wire was a question for the jury.

6. SAME—DAMAGES.
   A verdict of $2,500 for dislocation of an arm, resulting in
   weakness of the muscles and occasional pain nearly a year
   after plaintiff's injury, by which he was disabled from work
   for about 20 days, should not be set aside as excessive.

Error to Gogebic; Cooper, J. Submitted November
10, 1911. (Docket No. 85.) Decided March 12, 1912.

Case by Bartholomew Huber against the Twin City
General Electric Company for personal injuries. Judg-
ment for plaintiff. Defendant brings error. Affirmed.

*Charles M. Humphrey*, for appellant.

*M. M. Riley* and *L. S. Rice*, for appellee.

Plaintiff, a man 40 years of age, had for 20 years been
following the occupation of an electric lineman. He was
experienced in the handling of live wires. In his work he
customarily repaired electric light, telephone, and tele-

---

[1] Liability of electric company to employé for injury caused by
electric shock, see note in 32 L. R. A. 351.

graph wires. These wires sometimes carried a high voltage. He had handled those carrying as high as 4,000 volts. In the spring of 1909 the defendant was engaged in changing the character of its transmission line to a more modern and economic system. In so doing it became necessary to remove the live wires from the old poles to the new, and to take down and remove the old ones. Plaintiff secured employment upon this job as a man of experience, and had worked thereon for about two months prior to the date of his injury, July 6, 1909. On the morning of that day he came to a pole which carried the wires around a corner. This pole was sustained by two guy wires which ran from the pole at different heights to anchors in the ground. Plaintiff had removed the two lower arms from the pole as well as the lower guy wire. He was ascending the pole to get into position to take off the next arm, when, in order to get in front of his work, he seized the upper guy wire, and received through his body an alternating current of electricity of 1,100 volts. He was unable to release himself from the guy wire for a short time, but finally became unconscious, and would have fallen to the ground but for the fact that his life belt prevented. His companions lowered him by means of a rope, when it was found he had suffered a dislocation of the shoulder. This dislocation was, with considerable difficulty, reduced after plaintiff had been rendered unconscious by the use of an anesthetic. After 20 days plaintiff resumed his work, but claimed that his shoulder pained him at times, and that his arm was weak up to the time of the hearing in the court below, which was May 17, 1910. The guy wire which caused plaintiff's injury had become charged by reason of the fact that the live wire had become released from the pin, or the pin had broken, thus permitting the wire to be drawn against the brace supporting one of the arms. The wire rubbing against the brace destroyed the insulation, and the brace, in turn, carried the current to the guy wire. There was at this corner a strain which had a tendency to break the pins

carrying the live wires, and the upper guy wire was so placed as to receive the current if the pins broke and permitted the live wire to reach the brace. This particular guy wire had become charged upon at least two occasions previous to the day on which plaintiff was injured. One of these occasions was about two weeks before the day of the injury. Upon each of these occasions the defendant upon being notified sent a man to remedy the defect. The declaration charges negligence, in that the line was improperly constructed, in that the live wires were not properly insulated, and in that defendant, having knowledge of the dangerous and unsafe condition of the wires upon the pole in question, failed to warn the plaintiff of such danger. Plaintiff having recovered a judgment, defendant reviews its case in this court by writ of error.

BROOKE, J. (*after stating the facts*). Defendant contends that the judgment should be reversed for several reasons:

(1) Because the court erred in admitting evidence of the fact that the guy wire had become charged upon two former occasions; it appearing that the defendant upon being notified had at once caused repairs to be made.

(2) Because the court erred in admitting testimony that when repairs were made before the accident they were not made properly.

(3) Because the court erred in admitting testimony that the lines at the place of the accident were not originally properly constructed.

(4) Because the court erred in his charge to the jury.

(5) Because plaintiff was guilty of contributory negligence.

(6) Because plaintiff assumed the risk.

With reference to the first, second, and third reasons assigned, we content ourselves with saying that no error was committed in admitting the testimony of which complaint is made. It must be borne in mind that through the operation of natural laws the strain upon the mechanism used to hold in place the line carrying the deadly

current around a corner was much greater at that point than upon a straight line. It was, of course, the duty of defendant to so construct its line as to reasonably meet this condition. The fact that through the improper location of the guy wire or the breaking of the pin holding the live wire the guy wire had become charged upon at least two previous occasions, was important, and we think competent, evidence tending to show notice to defendant of the dangerous situation at this point, and such evidence does not become incompetent or immaterial as soon as it is shown that the defendant undertook repairs which the event proved to be inadequate. The character of the repairs made was in our opinion likewise the subject of proper inquiry. It appears that, upon the occasion about two weeks before the day of plaintiff's injury, Boden, who made the repairs for defendant, found (so he testifies) that the insulation on the live wire was cut or rubbed off, he supposed by swaying and coming into contact with the guy. The repairs made consisted in winding some tape about the guy wire which at that point was very close to, but not touching, the live wire. In view of the facts that the guy had become charged, that it was located in a public street, and that when charged it carried a current of high voltage, we think the question of the sufficiency of the repairs made was clearly one for the jury. It was shown by the plaintiff that the pin carrying the live wire was broken, and that the break was an old one. Boden testified that he did not notice the broken pin when he made his repairs. The jury might very well conclude, however, from the other testimony that the pin was broken at that time.

The contention made that, because defendant was about to change its entire construction it owed a less imperative duty in the premises, cannot be maintained. The handling of electrical currents of high voltage is a business extremely hazardous, and those engaged in that business are charged with the duty of exercising a very high degree of care for the protection of life. The charge, to parts of

which objection is made, when read as a whole, is, in our opinion, not open to criticism. Assuming that no error was committed in the admission of the testimony of which complaint is made, it correctly sets out the claims of the parties and the applicable law.

A more serious question is raised in reference to the assumption of risk. In *Chisholm* v. *Telegraph Co.*, 176 Mass. 125 (57 N. E. 383), it is said:

"The danger from an imperfectly insulated wire is the most characteristic risk which a lineman has to encounter. * * * Everybody knows that there always is a chance that the insulation of a wire may become worn off or defective from some cause."

Again, in *Britton* v. *Telephone Co.*, 131 Fed. 844 (65 C. C. A. 598), the court says:

"Linemen must, in the very nature of the occupation, be often required to work alone, or in association with other linemen, and it would seem quite impracticable and unreasonable to send one man as an inspector with another of equal fitness to test a pole before climbed by the latter."

The case of *Anderson* v. *Telegraph Co.*, 19 Wash 575 (53 Pac. 657, 41 L. R. A. 410), is a case which upon the facts much resembles the case at bar. In that case a lineman of the defendant was injured by coming into contact with a guy wire which had become charged through the breaking of an insulator. It was held that he could not recover, because by the exercise of care he could have discovered the danger In the case of *De Kallands* v. *Telephone Co.*, 153 Mich. 25 (116 N. W. 564, 15 Am. & Eng. Ann. Cas. 593), this court held that a lineman assumed the risk of all dangers incident to his employment which he actually knew or should know. Again, in *Lynch* v. *Traction Co.*, 153 Mich 174 (116 N W. 983), it was held that an experienced lineman assumed the risk of injury resulting from his employer's method of inspection with which he was familiar.

The case at bar, however, we think, is distinguishable from those cited and relied upon by defendant. Here the

defendant had actual notice of the faulty character of its appliances at the point in question. It is true that the plaintiff by his contract of employment assumed the risk of injury from those dangers which he knew existed, or which in the exercise of care he should have apprehended. The record, however, shows that the office of the guy wire is to maintain the pole in an upright position, and it is supposed to be free from the electrical current. Whether plaintiff should have apprehended the possibility of its being charged and governed his actions accordingly was a question for the jury which was properly submitted. We think, moreover, that the jury might well conclude that, possessing the knowledge which it did possess, it was negligence on the part of the defendant to fail to warn plaintiff of the extraordinary hazard he encountered in climbing the pole in question.

After this case was submitted, a motion was made for leave to amend the record in order that the court might consider the question of the alleged excessive character of the verdict.

The motion may be disposed of by saying that, though not properly before us, we have examined the testimony bearing upon the damages, and are of the opinion that a verdict in the sum of $2,500 is not so excessive as to warrant this court in disturbing it.

The judgment is affirmed.

MOORE, C. J., and STEERE, STONE, and OSTRANDER, JJ., concurred.