BAXTER *v.* CITY OF LANSING.

MASTER AND SERVANT—MUNICIPAL CORPORATIONS—ELECTRICITY—
NEGLIGENCE.

A lineman in the employ of a city plant, who had notice
that the line which he was ordered to repair had been for
some time in poor repair, and that the insulation was
defective, and who, in the exercise of reasonable care
for his own safety, might have observed a fallen connec-
tion and avoided it in climbing defendant's pole, was
chargeable with negligence contributing to his injury, bar-
ring his recovery.

Error to Ingham; Collingwood, J. Submitted Jan-
uary 3, 1916. (Docket No. 11.) Decided March 30,
1916.

Case by Arthur C. Baxter against the City of Lan-
sing for personal injuries. Judgment for defendant on
a verdict directed by the court. Affirmed.

*Warner, Raudabaugh & Person,* for appellant.

*Joseph H. Dunnebacke (L. B. McArthur,* of coun-
sel), for appellee.

MOORE, J. The defendant city has owned and op-
erated an electric light plant for many years. It fur-
nishes electric lights for the use of the city and for
its citizens. One of the most important lines of
wires runs from the plant west on Allegan street
and serves a large territory. This line had been in
use for many years, and it got in a condition which
made it desirable that it should be generally repaired
and put in proper condition. It was what is known
as a single-arm construction. It was decided while
repairing the line to make it a double-arm construc-

tion.  Plaintiff was an experienced lineman with 15 or more years' experience.  While making repairs on the Allegan street line July 3, 1911, he received a shock of electricity which rendered him unconscious.  He regained consciousness before reaching home.  He was burned in several places.  About the 10th of July he worked at light work at the water-works for the city.  A month after receiving the injury he resumed work as a lineman.  Later he was put in charge of a truck, and continued to work for the city in the electrical department until July, 1913.  During this time he made no claim because of his injuries against the city.  This suit was commenced in March, 1914.  At the conclusion of the testimony offered on the part of the plaintiff, the trial judge directed a verdict in favor of the city.  The case is brought here by writ of error.

The important question is:  Should the case have been submitted to the jury?  It is the claim of counsel that defendant failed in its duty when the line was originally constructed.  It is the contention that an iron brace which stayed one of the cross-arms was fastened by an iron bolt which passed through the brace and the cross-arm near a metallic lightning arrester, which was placed under a high voltage feed wire, which wire became unfastened from the insulator and rested upon the lightning arrester, and when the insulation wore off the feed wire it charged the lightning arrester, which in turn charged the bolt and the metallic brace, and when plaintiff took hold of the brace the electric current passed through his body.  We quote from the brief of counsel:

"What we have in mind is an original defect in the construction of the system of electric wiring on this pole.  As to such negligence, in the absence of other circumstances, the general rule seems to be that an electric lineman is not barred from recovery by the

rule of assumed risk or the rule of fellow servant, where, as in this case, there is no evidence that any of the linemen employed at the time of the injury were so employed at the time the system was built, or that plaintiff had any knowledge, or means of knowledge, of the original defect, and it seems to be the rule that plaintiff does not, by his contract of employment, assume the risk of the negligence of the original lineman who created the system and did the work thereon, with whom he did not assume the relation of coemployee, and whose acts are unknown and unknowable to him." Citing *Livingway* v. *Railway Co.*, 145 Mich. 86 (108 N. W. 662) ; *Huber* v. *Electric Co.*, 168 Mich. 531 (134 N. W. 980) ; *Morgan* v. *Electric Co.* (Pa. Sup. Ct.) 19 Am. Neg. Rep. 504.

The specific claim of negligence is that the lightning arrester should not have been placed so near the bolt which passed through the iron brace.

It will be profitable to refer here to the testimony of the plaintiff. He had worked for the city as lineman for more than a year, having had much experience when he entered its employ. He knew the Allegan line was an old one, out of repair in many respects, and that it was proposed to give it a general overhauling and put it in repair. He knew it was in bad shape, that it needed new cross-arms, that some of the wires were loose, and were improperly insulated. He knew of the feed wire, and that it was charged day and night with upwards of 2,000 volts, and that the current would not be turned off while the work was going on. It was part of his duty as lineman, not only to string new lines, but to repair defects generally. He knew the insulation was worn off in places, and the cross-arms and insulators needed renewing, and the braces needed tightening. Plaintiff and his companions had a complete line of materials and tools with which to do the work. The city did not possess any information of defects which he did not possess. He knew that no person was sent ahead of him and his

companion to inspect conditions of safety before com-
mencing the work of repairs. He had been engaged
in putting defective wires in repair for the city for a
year and a half. He testified that, if the feed wire
had not become detached from the insulator, the light-
ning arrester, the bolt, and the brace would not have
become charged with electricity. He testified that be-
fore going up the pole he made no examination of its
condition; that it was not until after the injury that
he examined to find out what was the trouble. He
testified that, upon his return in the afternoon of the
same day, he could see from the ground the proximity
of the bolt to the lightning arrester, and could also see
that the feed wire was detached from the insulator
and was resting on the top of the lightning arrester,
and that he could have seen these conditions just as
readily before he went up the pole if he had looked.

The testimony was much more in detail than we
have given it.

It is clear that, as originally constructed with the
feed wire attached to the insulator, the injury could
not have happened. It is also clear that the plaintiff
knew, or might have known by the exercise of ordinary
care, as much about the existing conditions as any one.
An examination of the cases cited by counsel for ap-
pellant will show they are easily distinguishable from
the instant case. Indeed, so far as they are applicable
at all, they sustain the action of the circuit judge in
directing a verdict.

In Baldwin, Personal Injuries, § 357, it is said:

"The same rule (assumption of ordinary risks by
workman) applies to servants engaged in repairs,
since, where a servant is employed to put a thing in a
safe and suitable condition, it would be unreasonable
and inconsistent to require the master to have it in a
safe condition and good repair for the purpose of such
employment. In such a case, the servant must ad-

mittedly work in a place out of repair, and therefore to a greater or less extent unsafe, for the purpose of making it safe."

See notes.

In 3 Labatt, Master and Servant (2d Ed.), § 1176, it is said:

"A principle analogous to that which is stated in the preceding section is that a servant who engages in the work of bringing back to a safe condition any part of the plant which has become abnormally dangerous assumes all the risks which are obviously incident to the work thus undertaken. As regards such a servant, those risks are ordinary, even though their existence may, as regards servants whose duties involve merely the use of the instrumentality in question, imply culpability on the master's part. In other words, a servant put to work to repair a defective appliance cannot be heard to complain of its being defective, 'inasmuch as that very thing is the cause of his being there, and he undertook to set it right, being paid for the risk he ran, and voluntarily incurring it.' The rule which casts upon the master a liability for failing to provide reasonably safe instrumentalities for the use of his servants is deemed to be suspended under such circumstances."

See, also, *Manning* v. *Railway Co.*, 105 Mich. 260 (63 N. W. 312) ; *Chisholm* v. *Telephone & Telegraph Co.*, 176 Mass. 125 (57 N. E. 383) ; *Pembroke* v. *Electric Light Co.*, 197 Mass. 477 (84 N. E. 331) ; and *Perry* v. *Railway Co.*, 72 W. Va. 282 (78 S. E. 692).

Judgment is affirmed.

STONE, C. J., and KUHN, BIRD, STEERE, and BROOKE, JJ., concurred. OSTRANDER and PERSON, JJ., did not sit.