KAWBAWGAM HOTEL COMPANY *v.* MICHIGAN
GAS & ELECTRIC COMPANY.

1. Appeal and Error—Judgment Notwithstanding Verdict—Evidence.

All proofs are viewed in the light most favorable to plaintiff on review of a judgment for defendant notwithstanding verdict.

2. Gas—Explosions—Negligence—Proximate Cause—Evidence—Refilling of Excavation.

Evidence presented in hotel company's action against defendant gas company for damages from explosion of gas in plaintiff's basement, alleged to be due to defendant's negligence in permitting backfilling of excavation pursuant to wetting down method rather than by pneumatic tamping when city exposed cast iron gas main, some 4–1/2 feet below surface in order to repair a clogged sewer some 8 feet beneath the gas main, which later resulted in a break of the gas main near the edge of the excavation *held*, sufficient to have left the questions of defendant's negligence and proximate cause for determination by jury.

3. Negligence—Evidence—Customs and Usages—Gas—Explosions—Soil Support for Gas Main.

Evidence of the ordinary practice or of the general custom was competent evidence of securing soil support around gas lines in an action for negligence arising from explosion of gas which had escaped from a broken main following deep excavation the refilling of which had been supervised by defendant's employees but permitted to be done in a manner other than that customarily employed by defendant.

Appeal from Marquette; Rushton (Carroll C.), J. Submitted November 6, 1963. (Calendar No. 58, Docket No. 50,121.) Decided April 6, 1964.

References for Points in Headnotes

[1] 5 Am Jur 2d, Appeal and Error § 886.
[2] 24 Am Jur, Gas Companies § 22 *et seq.*
[3] 20 Am Jur, Evidence § 333.

Case by Kawbawgam Hotel Company, a corporation, and Insurance Company of North America, a corporation, subrogee, against Michigan Gas & Electric Company, a corporation, for damages resulting from a gas explosion. Judgment for defendant *non obstante veredicto*. Plaintiffs appeal. Reversed and remanded for entry of judgment on jury verdict.

*Davidson, Clancey & Hansen* (*Walter L. Hansen,* of counsel), for plaintiffs.

*Burney C. Veum* and *McGinis & Fitzharris* (*James R. Fitzharris,* of counsel), for defendant.

SMITH, J. Plaintiff hotel company, owner and operator of the Northland Hotel in the city of Marquette, joined by its insurer, instituted this suit for damages alleging defendant's negligence to be the cause of a gas explosion in the basement of the Northland. At the close of plaintiffs' proofs, defendant moved for a directed verdict and decision on the motion was reserved. Defendant renewed the motion at the close of its proofs. The motion was denied, and the case submitted to the jury solely on the issue of liability, by stipulation of the parties. Verdict was returned in favor of plaintiffs. Defendant then moved for judgment notwithstanding the verdict, which was granted, and from this judgment plaintiffs appeal.

Crucial allegations of negligence in plaintiffs' declaration, insofar as this appeal is concerned, are as follows:

"(1) Agents and employees of said company, although notified by the said city of Marquette of the fact that an excavation was being carried on in an area adjacent to said gas company mains, failed to properly and carefully supervise said excavation so as to avoid damage to the said gas mains.

"(2) The agents and employees of said gas company failed to properly supervise the refilling of such excavation, failed to see to it that sound fill was used in proper manner and quantities to prevent settling of the soil and fill and the resultant application of strains and pressures on the gas mains after the excavation had been refilled."

Proofs offered in support of these allegations are summarized herewith.  On October 15, 1959, employees of the city of Marquette commenced excavation in the intersection of Ridge and Front streets. Excavation was for the purpose of repairing a blocked sewer line located about 12 to 13 feet below street surface.  A large hole was dug to expose the sewer for repair.  At a depth of approximately 4-1/2 feet below street surface a 3-inch cast iron gas line owned by defendant was exposed.  The subsurface was said to consist entirely of sand "all the way down from the road-bed surface."

This cast iron gas line extended east and west to join a north-south line of 6-inch steel pipe.  The northwest corner of the Northland Hotel is approximately 100 feet south of the southeast corner of Ridge and Front streets.  After the explosion the area was re-excavated and a large break was found in the cast iron gas pipe between 1 and 2 feet from the edge of the excavated area.  It is undisputed that the break occurred some time after the refill of the first excavation, made to repair the sewer line.

At the time of excavation for sewer repair, as was the custom, city employees notified the defendant gas company of the excavation.  Two gas company employees were assigned to see that the company's gas lines were properly protected during the excavation and filling operation.  These gas company employees approved the method of backfilling used by city employees.

It is the method of backfilling which poses the

central issue in this review. Defendant says: "The question is whether the method employed by the city of Marquette under supervision of defendant was negligent." Neither side will dissent from the statement that the larger question is this: Viewed in the light most favorable to plaintiffs, did all proofs (from plaintiffs and defendant) present issues of fact for jury consideration on whether there was negligence on the part of defendant and whether said negligence, if any, was a proximate cause of the damages?

Obviously, the central argument revolves about the method of refilling or "backfilling" the excavated hole. The method used for compacting the backfill consisted of periodic wetting of the sand as it was put back. Plaintiffs attempted to show that the gas company was negligent in assenting to the use of this method when, "At all other times and places", the gas company used pneumatic tampers to compact the backfill under and around its gas mains after excavation. Defendant counters by saying that plaintiffs could not and did not show that the method actually used was negligent. Shortly after the explosion, representatives of the State fire marshal's office and of the Michigan department of health made certain tests to determine the presence of explosive gas. Gas was found along the west wall of the basement of the hotel. A series of test holes was drilled through the sidewalk and in the street along the east side of Front street, commencing at the west end of the Northland Hotel. Increasing quantities of explosive gas were found as the tests approached the intersection of Front and Ridge streets. This undoubtedly led to re-excavation of the area which had been excavated for sewer repair and refilled approximately 10 days before the explosion.

Upon re-excavation the 3-inch cast iron gas pipe was exposed and found to be entirely broken through

and quantities of gas leaking from the break into surrounding areas. It was the opinion of both investigators that gas from the break had leaked underground to the hotel basement. Both testified on behalf of plaintiffs.

Defendant's position was that the gas which collected and exploded in the basement of the Northland was methane, or "swamp" gas rather than propane, the kind in defendant's gas line. Plaintiffs countered by offering testimony to show that no methane gas had ever been found in this area. It was also defendant's position that heavy rains occurring after refilling, along with vehicular traffic over the refilled area, had probably caused the breach in the gas line.

Plaintiffs' position is that improper backfilling resulted in break of the gas line, from stresses and strains on the "brittle" cast iron pipe, brought on by loss of soil support. Defendant challenges this vigorously, claiming there was no testimony to show that the method of backfilling employed caused the break in the gas line. There was testimony from 1 of defendant's witnesses that the ordinary practice or custom of defendant gas company was to use pneumatic tamping to secure backfill rather than to use the method employed herein, that is, a "wetting down" method.

In this regard, of special significance was the testimony, on direct examination, given by Mr. McKichan who made the investigation for the Michigan State health department. His testimony is quoted in part as follows:

"*Q.* But this was a complete breaking in the pipe?

"*A.* Yes. The nearest I could describe it was if this was the west side and this was the east side, it looked as if the east side of the pipe had gone off the horizontal like this and the break was where my fingers are.

"*Q.* You're indicating with your hands that the

break caused a lowering on the east end or that a lowering on the east end caused the break?

"*A*. There was a lowering on the east end when we found it and the break was on the top of the pipe.

"*Q*. As Mr. Garceau [gas company district manager] previously testified, a larger opening at the top of the pipe than at the bottom?

"*A*. Yes.

"*Q*. Approximately how deep would you say that gas main was found under the surface?

"*A*. I would say about, 4-1/2 feet.

"*Q*. Did you come to any conclusions as a result of this investigation, Mr. McKichan, concerning exactly what happened at the intersection itself, that is, in physical terms?

"*A*. You mean what caused the leak?

"*Q*. Yes, what caused the leak.

"*A*. Well, my opinion was that to the east of the break there evidently had been either a void in the sand or the sand was less firmly compacted than it was to the west of it and that allowed the pipe to settle away on that side of the break."

Defendant points out that witness McKichan did not examine the sand to see if a void existed under the gas line or if the sand in the area was less firmly compacted. Therefore, defendant says the conclusion of the witness is based upon inferences and not upon facts, hence is worthless.

On review of a judgment notwithstanding verdict, we view *all* proofs in the light most favorable to plaintiff. *Kasza* v. *City of Detroit,* 370 Mich 7. When so viewed, we think plaintiffs' proofs were sufficient to have been left with the jury on the questions of defendant's negligence and proximate cause.

Plaintiffs showed a large excavation in which the gas line was exposed some 4-1/2 feet beneath the surface while the excavation extended down to a sewer line approximately 8 feet beneath the gas line.

Unquestionably, the sandy soil was removed from under and around the gas pipe which was brittle and inferentially rigid. That 2 gas company employees were present to "supervise" refilling is conceded by defendant. The method of backfilling was shown, at least on favorable view, not to have been in accord with the ordinary practice of the gas company in securing soil support around gas lines. Upon the issue of negligence, evidence of the ordinary practice or of the general custom is generally competent. Such evidence is admissible to prove negligence. 38 Am Jur, Negligence, § 317, p 1015. Again, on favorable view, the testimony of witness McKichan, quoted above, is in support of plaintiff's position that improper backfilling caused the break in the gas line. He relates the nature and appearance of the observed break and then, as an expert, gives his opinion as to its cause. Proofs were then offered to show that gas escaping from the break likely found its way into the hotel basement where it was ignited. On favorable view, we think the testimony ample to have left the case with the jury on the questions of negligence and proximate cause.

Judgment notwithstanding the verdict for defendant is reversed and the case remanded for entry of judgment for plaintiffs based upon the jury verdict. Costs to plaintiffs.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, and O'HARA, JJ., concurred.

ADAMS, J., took no part in the decision of this case.