## KULHANJIAN v THE DETROIT EDISON COMPANY

1. APPEAL AND ERROR—EVIDENCE—RELEVANCE—ABUSE OF DISCRE-
TION.

   An abuse of discretion must be shown before the Court of Ap-
   peals will disturb a trial judge's ruling on the relevancy of
   evidence.

2. WITNESSES—EVIDENCE—EXCLUSION OF TESTIMONY.

   A defendant's attempt to have a listed witness testify was prop-
   erly refused where the plaintiff had relied upon the defendant's
   earlier statements that the witness was unable to be deposed
   because of ill health and that he would not be a witness at
   trial.

3. EVIDENCE—PHOTOGRAPHS—WITNESSES.

   A trial court did not err by excluding from admission into
   evidence photographs which had been in the defendant's posses-
   sion since shortly after the mishap giving rise to the plaintiff's
   cause of action but which were not listed at pre-trial where the
   content of the photographs would have been in direct conflict
   with testimony of the defendant's employees.

4. NEGLIGENCE—ELECTRICITY—INSTRUCTIONS TO JURY—STANDARD OF
CARE.

   The use of the phrase "high degree of care" in a jury instruction
   regarding the requirements for a defendant power company in
   handling electricity does not warrant reversal where the in-
   struction as a whole adequately explains that the standard of
   care to be applied by the jury is that which was reasonable
   under the circumstances of the case.

5. ELECTRICITY—IMPLIED WARRANTY—INSTALLATION OF WIRES—IN-
STRUCTIONS TO JURY.

   The doctrine of implied warranty has been held to apply to the

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 29 Am Jur 2d, Evidence §§ 785–787.
[2] 81 Am Jur 2d, Witnesses §§ 77–79.
[4] 57 Am Jur 2d, Negligence § 76.
[5] 26 Am Jur 2d, Electricity, Gas, and Steam § 104.
[6] 22 Am Jur 2d, Damages § 363 *et seq.*

sale of electricity and to the manner in which some electrical wiring and its hardware are installed; the installation of wires over private property gives rise to an implied warranty as to the manner in which the wiring was installed; therefore, an instruction to the jury on breach of warranty in a case based upon an accident involving electrical transmission wires was proper.

6. JURY—VERDICT—EXCESSIVE VERDICT.

A jury verdict of $1,000,000 in a personal injury case is not excessive where there are facts from which a jury could reasonably return such a verdict.

Appeal from Wayne, Thomas J. Brennan, J. Submitted October 12, 1976, at Detroit. (Docket No. 25509.) Decided January 17, 1977. Leave to appeal applied for.

Complaint by Jon K. Kulhanjian, by his next friend George Kulhanjian, and by George Kulhanjian, against The Detroit Edison Company, Franchise Exposition, Inc., and Gabriel Glantz for damages for injuries sustained when plaintiff Jon Kulhanjian came in contact with electrical wiring. Judgment for plaintiffs against Detroit Edison only. Detroit Edison appeals. Affirmed.

*Milan & Miller (Edward Grebs,* of counsel) for plaintiffs.

*Fischer, Franklin & Ford* (by *Richard Ford* and *Thomas F. Sweeney),* for the Detroit Edison Company.

*Hibbs & Lewis, P. C.,* for Gabriel Glantz and Franchise Exposition, Inc.

Before: D. E. HOLBROOK, JR., P. J., and N. J. KAUFMAN and D. C. RILEY, JJ.

N. J. KAUFMAN, J. This action was brought for personal injuries sustained by plaintiff Jon Kul-

hanjian (hereinafter plaintiff). It was tried in the Wayne County Circuit Court and a jury returned a verdict in which they found defendant Detroit Edison Co. (hereinafter defendant) guilty of gross, wilful and wanton misconduct and breach of warranty. Damages were assessed at $1,000,000 for plaintiff and $16,000 for plaintiff's father, George Kulhanjian. The jury found no cause of action as to defendant Gabriel Glantz. Defendant appeals from this adverse judgment as of right.

On July 22, 1971, plaintiff, a youth 15 years old, was working on the roof of one of Gabriel Glantz's buildings in Walled Lake. Above the building (which was referred to by the witnesses as the Dodge Em Building), were two wires installed by the Detroit Edison Co. running from Edison's pole on Novi Road eastward across Glantz's property to his dance hall. Plaintiff's boss, an independent contractor who had been given the job of demolishing the Dodge Em Building, assigned plaintiff to remove shingles from the roof with an adze while moving in a backwards motion—the first time he had performed this task. Plaintiff testified, without contradiction, that he was performing his task as instructed and that he was without knowledge that the wires above the roof were live. In fact, plaintiff testified that prior to the accident he had removed his jean shirt and placed it on the wire, which he stated stood at shoulder height. Nothing happened. However, as he proceeded to carry out his work he came in contact with the wire and the serious injuries ensued.

The events leading up to this mishap were summarized by defendant Glantz. In the summer of 1970, a building inspector for the city required that Glantz obtain a better electrical supply for his dance hall. As a result, Edison was called in

and several weeks later a new wire was installed over the Dodge Em Building. Glantz testified that he had asked that the location of the wires be changed for aesthetic reasons, but Edison felt the present location was proper. We note that Glantz denied telling Edison that the building was soon to be demolished, in direct contradiction to the testimony of one of Edison's employees. Additionally, he stated that he had no idea that the wires lacked insulation.

The allegations of plaintiffs' complaint were supported at trial, almost exclusively, by the testimony of Edison's own employees. Some of this testimony upon which plaintiffs attached great weight is as follows.

(1) It was stated that the minimum clearance requirement for the lower wire from the peak of the roof was eight feet. It was uncontroverted that at the time of the accident the wire had dropped substantially below this point;

(2) It was noted by Edison's employees that a likely cause was the fact that the installation crew had not installed the wire in accordance with either the drawing provided by one of Edison's Service Managers or in the Detroit Edison Co's. own manuals;

(3) It was stated that it was not the usual practice for Edison to install wires over buildings;

(4) It was conceded that Edison lacked a program whereby the installation could be inspected within a reasonable time after finishing the job. Instead, defendant relied upon its foreman to assure compliance with specifications; and

(5) It was because of the additional cost, of some $75–$100, that the wire was not insulated. This was so even though the previous wire was insu-

lated and, probably, it was the better practice to do so over a building.

With the foregoing factual background in mind, we reach defendant's claims on appeal. Defendant asserts that this case is honeycombed with serious errors requiring reversal. Objections are raised by the defendant, in this multifaceted attack on the propriety of the judgment, under the following three general headings:

I. There was prejudicial error in the trial court's rulings excluding evidence;

II. There was prejudicial error in the jury instructions; and

III. There was prejudicial error in the taking of the verdict and in not setting it aside. We will discuss these *seriatim.*

I.

The first challenge set forth by the defendant is that the trial judge erred in prohibiting any reference to plaintiff's previous narcotics use. It is defendant's position that this evidence was material on the issue of contributory negligence and, accordingly, its exclusion warrants reversal.

Before we disturb a trial judge's ruling on the relevancy of evidence, an abuse of discretion must be shown. *Birou v Thompson-Brown Co,* 67 Mich App 502, 513; 241 NW2d 265 (1976), *Kujawski v Cohen,* 56 Mich App 533; 224 NW2d 908 (1974), *lv den* 394 Mich 772 (1975). We think that the trial judge was entirely correct in finding this evidence irrelevant and highly prejudicial. There can be no doubt that the defendant failed to demonstrate the relevancy of this evidence to the facts of the case. Moreover, we note that plaintiff's drug problems

were brought to the jury's attention by the defendant's cross-examination of another witness.

Next, defendant asserts that a portion of plaintiff's engineering expert's testimony should have been stricken, as it lacked proper foundation. Defendant failed to properly preserve this objection for appellate review; and even if we were to reach this issue, it would not mandate reversal.

Lastly, we are urged to reverse this case because the trial judge excluded a witness, one Price, from testifying and, further, precluded the admission into evidence of a set of photographs taken shortly after the accident.

As to Price, defendant listed him as a witness. However, as defendant readily concedes, plaintiffs requested a deposition of the witness and were informed that the witness recently suffered a heart attack and would be unable to be deposed. Furthermore, they were told that he would not be a witness at trial anyway, so no deposition need be taken at a later time. Despite the foregoing, defendant at trial attempted to have the witness testify. The trial judge refused because of the plaintiffs' reliance on the defendant's earlier statements. We find no error in this ruling.

Defendant further attempted to justify the allowance of the witness's testimony by claiming "surprise" regarding plaintiff's expert's assertion that Edison should have used mox wiring in the installation of the wires. We find no surprise here. An earlier deposition of an Edison employee, a Manley Dayton, stated that Edison had previously used mox wiring. Thus, we must conclude that when plaintiff's expert asserted it should be used there was no surprise.

We also find no error regarding the exclusion of the photographs. The photographs were not listed

at the pretrial, although, admittedly, Edison had them in their possession since shortly after the mishap. However, we are again urged to find that the trial judge erred because the defendant was "surprised" by the testimony of a witness for the plaintiff at trial. The content of these photographs, if true, would have been in direct conflict with testimony of Edison's own employees, which had much earlier been taken by deposition. Thus, again, we find no surprise.

## II.

It is the position of the defendant that the instruction given by the trial judge concerning the requirement of the "high degree of care" of Detroit Edison in handling electricity violated the clear language of *Frederick v City of Detroit,* 370 Mich 425; 121 NW2d 918 (1963), and *Felgner v Anderson,* 375 Mich 23; 133 NW2d 136 (1965), which, it is claimed, precluded the incorporation into a jury instruction of the high degree of care language.

In response to this argument, plaintiffs assert that the instruction is correct for one of two reasons: (1) *Huber v Twin City General Electric Co,* 168 Mich 531; 134 NW 980 (1912), which held that the handler of high voltage electrical current does have a high degree of care, is still good law and (2) even assuming, *arguendo,* that *Huber* has been overruled, that by utilizing the principle that the instruction be taken as a whole, no error occurred because the instruction conveyed to the jury the fact that the standard of care they were to utilize was that which was reasonable under the circumstances.

It is true, as defendant argues, that the language in *Frederick* and *Felgner* frowned upon the use of the phrase "high degree of care" in jury

instructions. But it is also true that the use of this phrase does not warrant reversal if after reviewing the entire instructions an appellate court concludes that the trial judge adequately explained the standard of care to be that which was "reasonable under the circumstances of the case". See *Frederick, supra,* and *Wilhelm v Detroit Edison Co,* 56 Mich App 116; 224 NW2d 289 (1974), *lv den* 393 Mich 787 (1975) and 394 Mich 753 (1975). Accordingly, we need intimate no view on the continuing vitality of *Huber;* instead, we find, after reviewing the entire instruction, that it adequately conveyed the fact that the standard of care to be employed by the jury was that which was "reasonable under the circumstances of the case".

Considering defendant's next contention, we think that the evidence was sufficient to support an instruction on plaintiff's theory that defendant was guilty of gross negligence or wilful or wanton misconduct. We quote from the trial judge's opinion denying a motion for a new trial on this particular point:

"The Court was satisfied that the testimony of defendant's own employees found the installation which resulted in the accident was a hazardous way of installing equipment. This testimony was further buttressed by plaintiff's expert witness Mr. Squillace, who testified that wire at most should be 140 to 160 feet between two poles to avoid unnecessary sag, and in this case was 285 feet between poles. Defendant Detroit Edison testified that there was no follow-up inspection and that they were aware of the problem of sag and resulting drop in the line. They further testified that only one half of one percent of situations where an installation of this type is made a high-voltage wire strung over a building. The testimony further showed that the defendant Detroit Edison knew that the building eventually would be demolished and in so doing would require workmen to

be on it near the overhead wires. They testified that there was no follow-up inspection to observe and correct sagging."

These were probative facts from which the jury could find, with reason, that defendant was guilty of gross negligence or wilful or wanton misconduct.

Next, error is alleged in that the trial judge gave instructions on plaintiff's breach of warranty theory. It is strenuously urged that the decision by a panel of this Court in *Williams v Detroit Edison Co,* 63 Mich App 559; 234 NW2d 702 (1975), *lv den* 395 Mich 800 (1975), is controlling and, therefore, we are compelled to find error. Let us appraise this contention.

In *Williams,* it was held that no implied warranty existed where the deceased was electrocuted while working on a waterline on a public road when the "boom" on a backhoe that a fellow worker was using struck a power line which fell on a generator near the deceased. The wire jumped off the generator and struck the deceased.

In reaching this result, the Court stated principles pertinent herein:

"Electricity is a service rather than a 'good,' but the doctrine of implied warranty has been held to apply to its sale. *Buckeye Union Fire Insurance Co v Detroit Edison Co,* 38 Mich App 325, 329; 196 NW2d 316 (1972). Our Court has noted that *Buckeye* did not definitively limit the application of implied warranty, and has applied this concept to the manner in which some electrical wiring and its attendant hardware were installed. *Insurance Co of North America v Radiant Electric Co,* 55 Mich App 410, 412; 222 NW2d 323, 325 (1974), *lv den,* 393 Mich 763 (1974)." *Id,* at 564.

Our problem, then, insofar as the instant case is

concerned, is to determine how to apply these general principles to the posture of the case as developed at trial. Doing so, we think the defendant is dwelling under a misconception when he argues that *Williams* forecloses our concluding that submission of plaintiff's implied warranty theory was proper.

As we have previously noted, in *Williams* the accident occurred where a line passed over a public road, whereas in the present case the mishap occurred on the roof of a building on private property and the electrical wires were attached to a pole on private property. Thus, the *Williams* case does not decide the issue before us. This being so, we conclude that the instant factual situation gave rise to an implied warranty as to the "manner" in which this wiring was installed over Glantz's property.

Defendant has set forth numerous other complaints with the instructions. They have carefully been examined and rejected.

### III.

The only objection proffered by the defendant which we will discuss under this heading is his claim that the verdict was excessive. Were there probative facts from which a jury could reasonably return a $1,000,000 jury verdict? Obviously, yes.

To support our conclusion we will review a small portion of the testimony. At the time of the accident, plaintiff was 15 years old. He backed into a hot wire carrying 13,200 volts (2,500 volts is the amount usually used in the electric chair). He was hospitalized five months and had 11 operations. One of these operations entailed the drilling of holes in his skull to remove dead bone and debris

from the burn area. Approximately 1/4 of his body sustained burn damage. A further recitation of the injuries he sustained is not required. Suffice it to say that we agree with the trial judge that a verdict of $1,000,000 was well within the realm of possibilities for the jury to return.

Affirmed. Cost of this appeal to plaintiff.