Ollie J. VENTERS and Charlene K. Venters, Plaintiffs,

v.

MICHIGAN GAS UTILITIES COMPANY, a Michigan Corporation, Defendant.

MICHIGAN GAS UTILITIES COMPANY, a Michigan Corporation, Third-Party Plaintiff,

v.

WOODRUFF & SONS CONSTRUCTION COMPANY, a Foreign Corporation, and Williams and Works, a Michigan Corporation, Third-Party Defendants.

No. K75–398 CA8.

United States District Court, W. D. Michigan, S. D.

June 4, 1980.

346

Clarence Borns, Merrillville, Ind., Reamon, Williams, Klukowski & Craft, Grand Rapids, Mich., for plaintiffs.

F. William McKee, Grand Rapids, Mich., for defendant.

Charles E. Ritter, Kalamazoo, Mich., for third-party defendant Woodruff & Sons.

Grant J. Gruel, Grand Rapids, Mich., for third-party defendant Williams & Works.

## OPINION

DOUGLAS W. HILLMAN, District Judge.

This is a diversity action for injuries sustained by plaintiff Ollie J. Venters (Ven-

ters) in a gas explosion while he was working in a manhole at the intersection of Eighth and Boughton Streets in Benton Harbor, Michigan, on December 18, 1973. Venters filed suit against defendant Michigan Gas Utilities Company (MGU) and MGU in turn sued Woodruff & Sons Construction Company (Woodruff), Venters's employer, and Williams & Works (Williams). The case is before the court on the motion of third-party defendant Woodruff for judgment on the third-party pleadings, pursuant to Fed.R.Civ.P. 12(c). Because matters outside the pleadings have been presented to and not excluded by the court, the motion will be treated as one for summary judgment under Rule 56. For purposes of this motion, facts asserted and supported by the opposing party, the defendant and third-party plaintiff, are regarded as true. *Day v. UAW*, 466 F.2d 83 (6th Cir. 1972).

### . FACTS AND PLEADINGS

Plaintiff Venters, an Indiana resident, was employed by third-party defendant Woodruff, a foreign corporation authorized to do business in Michigan, when the accident occurred. Woodruff had been hired by the City of Benton Harbor to construct sewers in the city. The other third-party defendant, Williams, an engineering firm, had been hired by the City to supervise the sewer construction. Williams is not a party to this motion to dismiss. Defendant and third-party plaintiff, MGU, a Michigan corporation, is and was the owner of sub-surface natural gas lines at the intersection of Eighth and Boughton Streets.

During the week of December 10, 1973, Woodruff, the contractor, was excavating at the aforementioned intersection under the supervision of Williams and MGU. MGU had staked out the gas lines and informed both third-party defendants of the location of the lines under the streets. On Friday, December 14, MGU employees were called to the intersection to investigate suspected gas leaks. They capped a service line, but did not replace a cast iron "cross" connecting two mains, though MGU admits

a "fuzz" leak was observed at the cross. On Monday, December 18, plaintiff Venters and a coworker entered a manhole at the intersection. An explosion occurred and Venters was severely burned. An MGU investigation on the same day found the cross to be cracked and leaking gas, approximately 12 inches from the manhole.

Plaintiff Venters and his wife sued MGU in June, 1975, alleging liability of the Gas Company on the following six counts:

Count 1: Negligence in using inadequate materials, failing to inspect and control its pipelines as required by industry custom and federal and state law, failing to repair the leak on December 14, failing to warn plaintiff, and failing to supervise Woodruff's backfilling on the site of the leak.

Count 2: Gross negligence and willful and wanton misconduct in the above acts.

Count 3: Breach of implied warranties of safety, fitness, merchantability of its product, its means of distribution, and its repairs of December 14.

Count 4: Strict liability for an inherently dangerous activity.

Count 5: Negligence under res ipsa loquitur doctrine.

Count 6: Incorporation of these claims as a basis for the loss of services and companionship of Venters by his wife.

In March, 1977, then Chief Judge Fox of this court permitted MGU to file a third-party complaint against the two third-party defendants, Woodruff and Williams. MGU asserts a right of contribution or indemnity against Woodruff on the ground that the contractor's alleged negligent acts or omissions could result in the imposition of liability on MGU for plaintiff Ollie Venters's injuries, and if so, liability would be imposed without a finding of fault on the part of MGU. Specifically, MGU charges Woodruff was negligent in excavating above the gas pipeline; leaving the gas line exposed and unsupported; allowing concrete or asphalt to fall onto the gas line, causing it to crack and to permit gas to escape; backfilling soil over the gas line when Woodruff knew or should have known it may

have been leaking, or in a manner that failed to provide sufficient support; allowing heavy traffic over the gas line; failing to warn and instruct Venters and to post warning signs; and failing to inspect the manhole and take proper precautions to prevent gas ignition. The failure to fulfill these non-delegable duties, MGU alleges, was the direct and proximate cause of the explosion on December 18, 1973.

Woodruff denies liability and filed this motion for judgment on the pleadings on September 28, 1977.

### DISCUSSION

■ It is settled law that the law of the forum state is to be applied in diversity actions. *Erie R. R. Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Substantive rights of the third-party plaintiff to recover under a contribution or indemnity theory from a third-party defendant as the result of an accident in Michigan are determined under Michigan law. *Pelkey v. State Sales, Inc.*, 210 F.Supp. 924, 925 (E.D.Mich.1962). In this case, the explosion causing Venters's injuries occurred in Michigan, the claim accrued here, and consequently, Michigan law will govern MGU's rights against Woodruff on the third-party claim.

The principal issue before the court is whether, under applicable Michigan law, third-party plaintiff MGU has either a right of contribution or a right of indemnity against third-party defendant Woodruff. For the reasons given below, I conclude that depending on facts to be established at trial, MGU may have a right of indemnity against Woodruff and, accordingly, I deny third-party defendant's motion for judgment on the pleadings.

### A. CONTRIBUTION.

■ The court first turns to third-party plaintiff MGU's claim of a right to contribution from Woodruff. A right to contribution arises when tortfeasors have a common liability to the plaintiff. *Moyses v. Spartan Asphalt Paving Company*, 383 Mich. 314, 174 N.W.2d 797 (1970). A common liability may exist even though the parties are found liable on separate theories of law and for separate acts, if the concurrence of their acts was the proximate cause of a single, indivisible injury to the plaintiff. Where a common liability exists, each individual wrongdoer may be held liable to the plaintiff for the entire amount of the damages. *Caldwell v. Fox*, 394 Mich. 401, 231 N.W.2d 46 (1975). If one pays more than his pro-rata share, however, by Michigan statute, he is entitled to contribution from the other wrongdoers. M.C.L.A. § 600.2925a, M.S.A. § 27A.2925(1).

This general right of contribution is limited by Michigan law which holds a defendant may not implead an employer for contribution if the plaintiff was compensated for his injuries under the Workers' Disability Compensation Act, M.C.L.A. § 418.101, et seq., M.S.A. § 17.237(101), et seq. *Husted v. Consumers Power Company*, 376 Mich. 41, 135 N.W.2d 370 (1965); *Minster Machine Company v. Diamond Stamping Company*, 72 Mich.App. 58, 248 N.W.2d 676 (1977). The exclusive remedy provision of the Act, Section 131, states in pertinent part:

> "A right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer. As used in this section . . . 'employee' includes the person injured, his personal representative and any other person to whom a claim accrues by reason of the injury to or death of the employee . . . ."

■ Because the third-party plaintiff's claim of contribution against the third-party defendant is derivative of the principal plaintiff's right, an impleader action would require a finding that, with respect to the plaintiff, the employer and third-party plaintiff are joint tortfeasors. But this would violate the exclusive remedy provision of Section 131. Under the worker's compensation law, an employer has no common liability, and is not a joint tortfeasor with the defendant. *Husted*, 135 N.W.2d at 376.

Third-party plaintiff MGU argues that the employer immunity rule was effectively abrogated by the Michigan Supreme Court's recent adoption of comparative negligence in *Placek v. City of Sterling Heights*, 405 Mich. 638, 275 N.W.2d 511 (1979). In *Placek*, the Court heralded comparative negligence as a more equitable doctrine than contributory negligence because it "most nearly accomplishes the goal of a fair system of apportionment of damages". 275 N.W.2d at 519. The case concerned only the apportionment of fault between the plaintiff and the defendant. It did not involve a third-party complaint or worker's compensation, and the Court did not reach the effect of comparative negligence on impleader, joint and several liability, or contribution. *See*, 275 N.W.2d at 537, n.11 (Coleman, C. J., concurring in part, dissenting in part). Nevertheless, MGU urges this court to strike down employer immunity on the ground it is inconsistent with the philosophy of *Placek* and unfair. It maintains that Woodruff should be joined as a third-party defendant in order to accurately calculate relative degrees of fault.

█ This the court declines to do. No compelling reason has been presented to the court for striking down employer immunity. There are simpler ways to fairly calculate any damages MGU may owe plaintiffs without overturning an integral part of a complex legislative scheme for insuring worker protection, enacted nearly 70 years ago. Admittedly, the third-party plaintiff raises interesting questions of first impression in this court. For example, does the adoption of comparative negligence make the exclusion of employers from the calculation of damages unrealistic and unfair to defendants? Should the traditional theory of joint and several liability under which one defendant may be liable for the entire amount of damages also be swept aside? These questions, however, are properly left to the legislature and judiciary of the state to decide. I hold that Woodruff cannot be joined by MGU as a third-party defendant for the purposes of contribution.

## B. INDEMNITY.

█ The court turns next to third-party plaintiff MGU's claim to a right of indemnification from Woodruff. Indemnity is based on the equitable principle that where the wrongful act of one results in another being held liable, the latter party is entitled to total restitution from the wrongdoer. *Hill v. Sullivan Equipment Company*, 86 Mich.App. 693, 273 N.W.2d 527 (1979). The doctrine is distinct from contribution: it is not derivative of the plaintiff's rights against the third-party defendant but rather arises from a separate duty owed by the third-party defendant to the third-party plaintiff. Thus, the employer immunity provision of the Worker's Compensation Act does not bar an impleader action for indemnity against an employer. *Dale v. Whiteman*, 388 Mich. 698, 202 N.W.2d 797 (1972); *Husted, supra*. In *Dale*, the Michigan Supreme Court reviewed the various grounds for indemnity, including an express contract, an implied contract, or the special relationship of the parties. In addition, it noted that courts have permitted a defendant to implead and recover indemnity from a third party where the defendant was a "passive" tortfeasor, free from active, causal fault, and liable to the original plaintiff only by operation of law, whereas the third party was negligent as an "active" tortfeasor. 202 N.W.2d at 800. *See also, Roe v. Bryant and Johnston Company*, 193 F.Supp. 804 (E.D.Mich.1961); *Prosky v. National Acme Company*, 404 F.Supp. 852 (E.D.Mich.1975); *Pelkey, supra*; *Provencal v. Parker*, 66 Mich.App. 431, 239 N.W.2d 623 (1976). Quoting from 42 C.J.S. Indemnity § 21 at p. 597, the Michigan Supreme Court, in *Dale*, wrote:

"This right of indemnity . . . exists independently of statute, and whether or not contractual relations exit [sic] between the parties, and whether or not the negligent person owed the other a special or particular legal duty not to be negligent." 202 N.W.2d at 800.

Thus in *Dale*, when the owner of a car was held liable to an injured car wash employee solely on the basis of the Michigan Automobile Owner's Liability Statute, without a

finding of fault, he was permitted to recover common law indemnity from the owner of the car wash, whose active negligence caused the injury. And in *Nanasi v. General Motors Corporation*, 56 Mich.App. 652, 224 N.W.2d 914 (1974), the court permitted a general contractor and site owner to implead for indemnity the subcontractor-employer of the plaintiff's decedent because the principal complaint alleged vicarious liability for failing to supervise inherently dangerous activities, a form of passive negligence. It made no difference that the complaint also alleged the defendants' active negligence because, the court noted, they had pleaded freedom from all fault.

The instant action is similar to these cases. Counts 3 and 4 of the Venters' complaint allege that defendant MGU is, respectively, liable for breach of implied warranties of safety, fitness and merchantability and strictly liable for damages resulting from the conduct of inherently dangerous activities—both theories of passive liability without a finding of fault. Although the complaint alleges active negligence as well, MGU pleads that on the facts to be adduced at trial, it can be found liable, if at all, only on passive grounds. In turn, MGU claims that third-party defendant Woodruff is liable to it for active negligence in failing to warn MGU of its excavation, failing to excavate according to reasonable construction practices, failing to take precautions to prevent accidental ignition of gas, and failing to supervise an ultra-hazardous activity. Breach of these duties to warn MGU and make the area safe are alleged to be the proximate cause of Ollie Venters's injuries.

Woodruff denies that MGU has a right of indemnification against it. It states first that MGU cannot be found liable on the plaintiffs' claims of passive negligence alone. It points to cases wherein a power company was held to a normal negligence standard, *Kawbawgam Hotel Company v. Michigan Gas and Electric Company*, 372 Mich. 507, 127 N.W.2d 377 (1964), and the dismissal of strict liability and breach of warranty counts was upheld, *McLaughlin v. Consumers Power Company*, 52 Mich.App. 663, 218 N.W.2d 122 (1974). But these cases are distinguishable on their facts from the instant case. In *Kawbawgam Hotel Company*, the defendant was held to an active negligence standard after it was shown that its employees actually approved the faulty method of backfilling used by Marquette city employees. In the instant case, by contrast, the power company's control was less direct. In its answer to plaintiffs' interrogatory No. 104, MGU stated that neither the company nor its agents or employees backfilled or supervised the backfilling of the excavation, an alleged cause of Ollie Venters's injuries. In its answer to plaintiffs' request for admission, No. 2, MGU admitted that Tony Richardson, an employee and agent of the company, had been "assigned to coordinate excavating activities between [Woodruff] and [MGU]," but added that "during this assigned time period, Mr. Richardson was assigned to coordinate other construction projects as well." And in its answers to requests for admissions, Nos. 19, 20, 21 and 22, MGU stated that, although it "held itself available to [Woodruff] to supervise backfilling upon their request", it denied knowing Woodruff's standard operating procedure was to backfill on the same day pipe was laid, denied being aware that backfilling causes "unavoidable ground movement which increases stress and pressure on gas lines", and denied knowing Woodruff was backfilling a portion of the excavation where the pipeline cross was located. Taking these answers and denials as true for the purposes of this motion, it is entirely possible MGU could be found free of active negligence, but still liable on the passive or strict negligence counts alleged by the Venters.

The *McLaughlin* court's dismissal of the strict liability and breach of warranty counts is distinguishable, too, because as the court stated tersely, the plaintiff had merely pleaded legal conclusion without adequate factual support. That does not appear to be the case here.

Third-party defendant Woodruff also argues that MGU cannot be liable on a breach of implied warranty theory because, on the authority of *Williams v. Detroit Edison*

*Company*, 63 Mich.App. 559, 234 N.W.2d 702 (1975), no warranty can arise until the manufacturer gives up control of the good or service to a third person. The court of appeals, however, refused to follow *Williams* in *Kulhanjian v. Detroit Edison Company*, 73 Mich.App. 347, 251 N.W.2d 580 (1977). The court attempted to distinguish the cases by explaining that *Williams* involved wires strung over a public road, whereas *Kulhanjian* involved wires attached to a pole on private property. Despite the purported importance of this distinction, it is clear that the *Williams* "control" test is in doubt because the manner in which the wires were installed in *Kulhanjian* was no less under the control of the power company. Nevertheless, should the control test survive, the degree of control exercised respectively by MGU and Woodruff becomes a relevant factual question to be determined at trial.

The second part of Woodruff's response states that it cannot be subject to a right of indemnity because the pleadings do not show a contract or special relationship between MGU and Woodruff. But MGU's claim for indemnity is based on a different and wholly alternative ground, the passive/active negligence dichotomy between the two parties. Thus, it is irrelevant that MGU has not based its indemnity claim on the existence of a contract or special relationship.

## CONCLUSION

Taking the facts asserted by the party opposing the motion as true, and giving it the benefit of any implications arising from the pleadings and other matters submitted to the court, I find that MGU's third-party complaint states an enforceable claim for indemnity from Woodruff as a matter of law. On the facts alleged, it is possible that a jury may find MGU liable to the Venters only as a passive tortfeasor, and that Woodruff may be found liable as an active tortfeasor. Third-party plaintiff MGU is entitled to have its claim for indemnity tested factually at trial.

Accordingly, I hold that third-party defendant Woodruff's motion for summary judgment must be denied.

IT IS SO ORDERED.