PEOPLE v McCLINTON ROBINSON

Docket No. 67625. Decided March 25, 1983. On application by the
defendant for leave to appeal, the Supreme Court, in lieu of
granting leave to appeal, reversed the judgments of the Court
of Appeals and the Recorder's Court of Detroit and remanded
the case for a new trial.

McClinton Robinson was convicted by a jury in the Recorder's
Court of Detroit, Leonard Townsend, J., of second-degree mur-
der as a result of a shooting. The defendant offered the defense
that the victim's death was caused by grossly erroneous medi-
cal treatment, but the trial court would not permit the defen-
dant's expert witness to give his opinion whether the treatment
was grossly erroneous. The Court of Appeals, N. J. Kaufman,
P.J., and Allen and D. C. Riley, JJ., affirmed (Docket No.
49922). On application by the defendant for leave to appeal, the
Supreme Court, in an opinion per curiam, signed by Chief
Justice Williams and Justices Kavanagh, Levin, Ryan, Brickley,
and Cavanagh *held:*

Opinion testimony by the defendant's expert witness that the
medical care received by the victim was grossly erroneous was
admissible. The witness was qualified to render an opinion on
the issue. The opinion did not concern the guilt or innocence of
the defendant, but the nature of medical care received by the
victim. Under the rules of evidence, such an opinion may not
be challenged on the ground that it embraces an ultimate issue
to be decided by the trier of fact.

Reversed and remanded.

107 Mich App 417; 309 NW2d 624 (1981) reversed.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward Reilly Wilson,* Dep-
uty Chief, Civil and Appeals, and *Janice M. Joyce
Bartee,* Assistant Prosecuting Attorney, for the
people.

*Gerald M. Lorence* for the defendant.

PER CURIAM. This defendant has been convicted of second-degree murder following the death of a woman whom he shot in the arm. At trial, he interposed the defense that her death was caused by grossly erroneous medical treatment. The issue before us is whether the trial court properly excluded certain expert testimony offered by the defendant. We hold that the trial court erred in excluding the proffered evidence, and we reverse.

I

The defendant shot the victim on November 5, 1978. The victim's attending physicians tried first to save her arm, but the limb was amputated on November 11, 1978. The victim died on December 14, 1978. At the time of her death, she had an advanced case of pneumonia, and infection had spread throughout her body.

The defendant's position was that the failure of the victim's treating physicians to amputate the arm earlier constituted grossly erroneous treatment.[1] To support this view, the defendant called to the stand the Oakland County medical examiner. The witness testified that the arm should have been amputated immediately and that, had the arm been removed promptly, the victim would not have died. He said that the death had been caused by infection and pneumonia and that proper medical treatment would have consisted of a prompt amputation.

Defense counsel sought to ask the witness whether the victim had received grossly erroneous medical treatment, but the trial court repeatedly

---

[1] This defense was drawn from *People v Flenon,* 42 Mich App 457; 202 NW2d 471 (1972).

refused to allow such a statement, saying that such testimony would be "a legal conclusion" and thus improper.

The Court of Appeals affirmed. *People v Robinson,* 107 Mich App 417; 309 NW2d 624 (1981). On May 24, 1982, we ordered the prosecutor to show cause "why the defendant's conviction should not be reversed because defendant's medical expert, although qualified to do so, was not permitted to testify that failure to immediately amputate the arm of the victim was grossly negligent medical treatment". The prosecutor has answered this order and the defendant has responded.

## II

The trial court erred in excluding this testimony. MRE 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact". The Court of Appeals acknowledged that rule, but drew from *People v Drossart,* 99 Mich App 66; 297 NW2d 863 (1980), an analysis that led to the conclusion that the trial court properly excluded the medical examiner's expert opinion:

"This Court recently addressed the issue in terms of whether an expert could render his opinion that a defendant was or was not 'mentally ill' or 'insane' at the time of the alleged offense. In *People v Drossart,* 99 Mich App 66, 82; 297 NW2d 863 (1980), the Court stated that such testimony did not invade 'the provinces of the judge and jury'. As stated by McCormick [Evidence (2d ed), § 12], *supra,* 'invasion of the province of the jury' (or judge) is little more than rhetoric, and the real fears are that the jury will subordinate its own analysis to the opinion of the expert, or, as stated by

Judge ALLEN in *Drossart,* the legal standard of the expert may be incorrect, incorrectly understood by the jury, or conflict with the trial court's instruction. *Drossart,* pp 76-77. The *Drossart* opinion goes on to state that the latter dangers would not be present 'if, in expressing his ideas and opinion on the matter, the witness refers to legal standards properly explained by the trial court or examining attorney'. *Drossart,* p 77.

"The following statements in *Drossart* are pertinent to the issue presented in the present case:

" 'Accordingly, a witness is not permitted to tell the jury how to decide the case. Thus, a witness is prohibited from opining on the issue of a party's negligence or nonnegligence, capacity or noncapacity to execute a will or deed, simple versus gross negligence, the criminal responsibility of an accused, or his guilt or innocence.* * * *

" '* * * However, where the expert's particular training and experience in a special field of activity—such as the study of mental diseases—is largely unfamiliar to the jury, his opinion can be submitted for the jury's consideration.' *Drossart,* pp 79-80. (Citations omitted.)

"Thus, according to this Court's decision in *Drossart,* it would appear that while a psychiatrist may testify that in his opinion a defendant was 'insane' at the time of an alleged offense, an expert may not opine on the degree of negligence in a medical malpractice case where a jury is as capable as anyone else of reaching such a conclusion on certain facts." *Robinson,* 107 Mich App 421-422.

Even if one fully accepts the principles stated in *Drossart,* the testimony proffered by this defendant was admissible. The Oakland County medical examiner did not propose to opine as to guilt or innocence. Rather he proposed to opine as to the nature of medical care received by the victim. A characterization of medical treatment as "grossly erroneous" is entirely proper if received from a qualified expert. The admissibility of such expert opinion is not subject to challenge on the ground

that the ultimate determination of guilt or innocence may well turn on whether that expert opinion is believed or disbelieved.

### III

The Court of Appeals employed a second ground for concluding that the trial court had properly rejected the medical examiner's expert opinion that the treatment was grossly erroneous. The Court of Appeals concluded that the defendant had failed to qualify the witness:

"[W]e are of the opinion that because of defendant's failure to demonstrate that [the medical examiner] had knowledge of the standard of practice for surgeons the trial court could have properly excluded his opinion of the degree of alleged malpractice on this basis." *Robinson,* 107 Mich App 423.

This conclusion was error. The medical examiner did have knowledge of the standard of practice for surgeons:

"*Q.* Are you,—well, would you say you would be qualified to testify as to the standard of practice of a surgeon in this community?

"*A.* Yes, sir.

"*Q.* And why would that be, doctor?

"*A.* Because I see all of the results of their surgery and I have been involved in determinations as a member of committees of staffs as to whether surgeons are qualified to perform surgery and what surgery they are qualified to perform since I have served on credentials committees of many staffs.

"*Q.* That is always after the fact?

"*A.* No, sir. That is before the fact. That is when they apply for privileges."

## IV

The Oakland County medical examiner was qualified to render an opinion on the question of whether the treatment received by the victim had been grossly erroneous. Such an opinion is properly received in a case of this sort. Accordingly, in lieu of granting leave to appeal, we reverse the judgments of the Court of Appeals and the Recorder's Court for the City of Detroit, and we remand this case to the Recorder's Court for the City of Detroit for a new trial. GCR 1963, 853.2(4).

WILLIAMS, C.J., and KAVANAGH, LEVIN, RYAN, BRICKLEY, and CAVANAGH, JJ., concurred.