DOWNIE v KENT PRODUCTS, INC

Docket No. 71735. Argued October 2, 1984 (Calendar No. 4).—Decided
December 28, 1984. Released January 14, 1985. Rehearing denied
421 Mich 1202.

Marjorie P. Downie brought a products liability action in the
Muskegon Circuit Court against E. W. Bliss Company and
others for damages resulting from the amputation of a portion
of her hand while using a power press manufactured by Bliss
in the course of her employment with Kent Products, Inc. The
jury found that Bliss was negligent in failing to warn that a
malfunction of a clutch latch could cause the machine to
recycle automatically and that its negligence was a proximate
cause of the plaintiff's injuries. Although Kent Products was
not a party to the action, the jury attributed 45% of the
negligence to Kent. The court, Ronald H. Pannucci, J., subse-
quently permitted the plaintiff to amend her complaint to add
Kent and its workers' compensation insurer The Home Indem-
nity Company as defendants and ordered that no reimburse-
ment of workers' compensation benefits would be allowed until
the amount of benefits exceeded the 45% liability. Kent and
Home Indemnity appealed the allowing of amendment of the
complaint and the reduction of their lien for workers' compen-
sation paid to the plaintiff. Bliss cross-appealed the trial court's
denial of its motion for a directed verdict regarding the duty to
warn. The plaintiff cross-appealed the issue whether Kent's
negligence was properly considered by the jury. The Court of
Appeals, MacKenzie, P.J., and D. E. Holbrook, Jr., and DeWitt,
JJ., concluded that the denial of Bliss' motion for a directed
verdict was correct, but reversed and remanded for a new trial
on the grounds that admission of evidence regarding warning
tags used by Bliss on similar machines subsequent to the sale
of the press to Kent was improper and that permitting the jury
to consider Kent's negligence was also improper because of the

REFERENCES FOR POINTS IN HEADNOTES

[1] 63 Am Jur 2d, Products Liability §§ 251 et seq., 352, 752.
Industrial presses. 8 ALR4th 70.
Admissibility of evidence of subsequent repairs or other remedial
measures in products liability cases. 74 ALR3d 1001.

[2] 81 Am Jur 2d, Workmen's Compensation §§ 50, 231.
82 Am Jur 2d, Workmen's Compensation § 429 et seq.

exclusive remedy and reimbursement provisions of the workers' compensation act (Docket No. 52584). The plaintiff appeals, and Bliss and others cross-appeal.

In a unanimous opinion by Justice Brickley, the Supreme Court *held:*

1. The trial court properly denied Bliss' motion for a directed verdict. Evidence presented in the trial court, although conflicting, was sufficient to establish a prima facie case that Bliss' failure to warn was a proximate cause of the plaintiff's injuries. Reliance on expert testimony by the trial court was proper.

2. The trial court properly denied Bliss' motion for a directed verdict. Evidence of warning tags used by Bliss subsequent to the sale of the press in this case, but prior to the plaintiff's injury, was properly admitted. Only remedial measures taken after the event of an injury or death are inadmissible.

3. The trial court properly denied Bliss' motion for a directed verdict. The trial court erred in permitting the jury to apportion negligence, in permitting the plaintiff to amend her complaint, and in limiting the employer's workers' compensation lien. Comparative negligence does not apply where contribution is sought from a plaintiff's employer; any application of comparative fault in such a case must await legislative action. The workers' compensation act provides the plaintiff's exclusive remedy against her employer. Absent an indemnity agreement, there is no common liability in tort between a third-party defendant and an employer. If, as in this case, a worker elects to pursue a claim arising out of the injury against a third party, the employer is entitled to full reimbursement out of a recovery for benefits paid.

Affirmed in part and reversed in part.

Justice Boyle, concurring, stated that while evidence of measures taken after the sale and delivery of a product but before an injury is not precluded under the Rules of Evidence where otherwise relevant, relevance was not shown in this case. The plaintiff did not establish a foundation in regard to the effect that the warning might have had on the manufacturer's knowledge of danger at the time the press was delivered, and thus admission of evidence of the warnings was error requiring reversal.

122 Mich App 722; 333 NW2d 528 (1983) affirmed in part and reversed in part.

### OPINION OF THE COURT

1. PRODUCTS LIABILITY — NEGLIGENCE — REMEDIAL MEASURES.

Evidence of warning tags installed on power presses by the

manufacturer subsequent to the sale of a similar press, but prior to an injury arising from the use of the press, was not evidence of remedial measures and was admissible with respect to the issue of negligence (MCL 600.2946[3]; MSA 27A.2946[3]; MRE 407).

2. WORKERS' COMPENSATION — COMPARATIVE NEGLIGENCE — REIMBURSEMENT OF BENEFITS.

The workers' compensation act provides a worker's exclusive remedy against an employer; where a worker elects to pursue a claim against a third party for injuries received in the course of employment, the employer is entitled to reimbursement of benefits paid to the worker from the amount of any recovery; comparative negligence principles may not be applied where the third party seeks contribution from an employer and may not be used to reduce the employer's lien for benefits paid (MCL 418.131, 418.827[1], 418.827[5], 600.2925a, 600.2925b; MSA 17.237[131], 17.237[827][1], 17.237[827][5], 27A.2925[1], 27A.2925[2]).

*McCroskey, Feldman, Cochrane & Brock* (by *J. Walter Brock*) for the plaintiff.

*Rhoades, McKee & Boer* (by *Michael J. Roberts* and *Gregory A. Block*) for defendants Kent Products and The Home Indemnity Company.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells* and *Kenneth L. Block*) for defendants E. W. Bliss Company and others.

BRICKLEY, J. This is an appeal of a products liability action arising out of a work-related injury. In addition to her pursuit of workers' compensation benefits from her employer, plaintiff filed this suit against the manufacturer of the machine on which she was injured.

This case poses three distinct questions for our consideration. The first is whether the courts below erred in denying defendant E. W. Bliss' motion for a directed verdict premised on the assertion that plaintiff had failed to present sufficient evi-

dence to demonstrate the existence of a prima
facie case of negligence due to a failure to warn.
The second issue is whether evidence of warning
labels, installed on defendants' presses manufac-
tured after the date of sale of this press, but before
the date of the plaintiff's injury, should have been
excluded under MRE 407 or MCL 600.2946(3);
MSA 27A.2946(3). The third issue involves three
related questions: whether it was proper for the
jury to be allowed to apply comparative negligence
principles and apportion the fault between the
defendant and the employer, who was not a party
to the suit; whether the employer could be added
as a party after the verdict had been rendered;
and whether it is permissible under MCL
418.827(5); MSA 17.237(827)(5), to reduce the em-
ployer's workers' compensation lien by the amount
determined by the jury to be reflective of the
employer's responsibility for plaintiff's injuries.

We agree with the Court of Appeals on the first
and third issues; however, we disagree with the
reasoning and result of the Court of Appeals on
the second issue. Defendant Bliss' motion for di-
rected verdict on the failure to warn count was
correctly denied. However, evidence of warning
tags used by Bliss subsequent to the sale in this
case but prior to plaintiff's injury was properly
admitted. Comparative negligence does not apply
where contribution is sought from plaintiff's em-
ployer; therefore, the apportionment of negligence
by the jury, the amended complaint, and the re-
duction of the lien were all in error.

## I

Plaintiff Marjorie Downie filed this products
liability action for injuries sustained December 10,
1975, in the course of her employment with Kent

Products, Inc.[1] The injury occurred while plaintiff was working on a power press manufactured by E. W. Bliss Company and purchased by Kent from Bliss in 1961. A portion of plaintiff's hand was amputated when the press unexpectedly recycled while she was hand-loading it. The recycling was apparently due to the malfunctioning of the clutch latch assembly which controls the stroking motion of the press. The part of this assembly which made the press a single-stroke machine, rather than one which would continuously recycle, broke at the time of plaintiff's injury.

Plaintiff was granted workers' compensation benefits for the injury from Kent and its workers' compensation liability insurer, The Home Indemnity Company. At the same time, she instituted this action against Bliss pursuant to MCL 418.827; MSA 17.237(827).

During the course of trial, plaintiff advanced several theories of recovery,[2] but only the issues of implied warranty and negligence arising from a duty to warn were presented to the jury.[3] The jury received a special verdict form on which it was

---

[1] Bliss, Gulf and Western Industry, Inc., Gulf and Western Industrial Products Company, and General Motors Corporation, were originally named as defendants. GMC was granted summary judgment, dismissing it from the suit. Bliss, Gulf and Western Industry, Inc., and Gulf and Western Industrial Products Company are considered the same party.

[2] Plaintiff had alleged strict liability, fraud and deceit, implied warranty, and negligence based on claims of gross negligence, a statutory violation, failure to guard, and failure to warn.

[3] Although the trial judge denied defendant's directed verdict motion on the issue of duty to warn regarding the operational dangers of the press, he was not wholly persuaded by plaintiff's argument that there was sufficient evidence of the existence of a duty.

"The court denies the motion. I could give a long dissertation as to why, but it would have nothing to do with being truthful with either party as far as the legal burden. It has to do with the current status of our appellate process and the appellate courts deciding cases in toto with not all of the whole portion of the case. And so as a result, I'll be on the cautious side. I totally agree with the record, with the defendants' contention that there is no evidence on this record which

permitted to apportion the liability among plaintiff, Bliss, and Kent. Kent was not a party to the litigation at that time. The jury found no breach of implied warranty but found that defendant's negligence in failing to warn was a proximate cause of the plaintiff's injuries. The jury awarded $121,000, attributing 45% of the negligence to Kent and 55% to Bliss.

Subsequently, the trial court permitted plaintiff to amend her complaint, adding Kent and Home Indemnity as defendants. Kent and Home Indemnity filed a counterclaim and raised affirmative defenses to the amended complaint. However, the court ordered that the workers' compensation lien and subrogation rights of Kent and Home Indemnity would be limited according to the special verdict, allowing no reimbursement of workers' compensation benefits paid or payable until those payments exceeded the amount of Kent's portion of the liability ($54,450).

Kent and Home Indemnity appealed the trial court's order allowing amendment of the complaint after the verdict. Bliss cross-appealed, alleging several errors related to the court's denial of Bliss' directed verdict motion regarding the duty to warn. Plaintiff also cross-appealed on the issue of whether Kent's negligence was properly considered by the jury.

After a lengthy analysis of the evidence presented to the trial court, the Court of Appeals concluded that denial of Bliss' motion for a directed verdict was correct in that plaintiff had

a reasonable jury could find that there was a duty to warn. But I would deny the motion. If it gets to the Court of Appeals, they can totally dispose of this case, rather than remanding it to a trial court to waste double or triple time.

"With reference to the engineering design, there is evidence to establish a fact question. With the warning issue, there isn't. But I'll let it go to the jury."

made out a prima facie cause of action for negligence on a failure to warn theory. However, the Court of Appeals reversed and remanded the case for a new trial because of the trial court's improper admission of evidence regarding the warning tags used by Bliss subsequent to the sale of the press, and because the jury's consideration of the employer's negligence was improper under the exclusive remedy and reimbursement provisions of the Worker's Disability Compensation Act, MCL 418.131,     418.827(5);     MSA     17.237(131), 17.237(827)(5).

Plaintiff's application for rehearing in the Court of Appeals was denied on May 10, 1983. Plaintiff applied for leave to appeal in this Court, addressing only the evidentiary issue. Bliss cross-appealed on the directed verdict and comparative negligence issues, and answered in opposition to plaintiff's appeal. Kent answered Bliss' cross-appeal on the comparative negligence issue only. We granted the application and cross-application for leave to appeal. 418 Mich 948 (1984).

## II

In its cross-appeal, Bliss maintains that the Court of Appeals erred in upholding the trial court's denial of Bliss' motion for a directed verdict, especially in light of the trial judge's comments to the effect that he was denying the motion only to avoid a remand,[4] and in light of the Court of Appeals misquotation of those comments.[5] Bliss also alleges error in the Court of Appeals reliance

---

[4] See fn 3.

[5] The transcript indicates Judge Pannucci's statement to be: "I totally *agree* with the record, with the defendants' contention * * *," rather than "I totally *disagree* [sic] * * *," as that statement is quoted by the Court of Appeals in *Downie v Kent Products,* 122 Mich App 722, 728; 333 NW2d 528 (1983).

upon the testimony of plaintiff's expert—testimony which embraced an ultimate fact or legal conclusion.[6]

The Court of Appeals devoted six pages of its published opinion to a thorough analysis of the facts relevant to plaintiffs' cause of action for negligence based on a duty to warn. The Court of Appeals concluded that, even though the evidence was conflicting, it was sufficient to establish a prima facie case that Bliss' failure to warn was a proximate cause of plaintiff's injuries. In spite of the trial judge's comments to the contrary, and the typographical mistake in the Court of Appeals opinion, we find no error in the Court of Appeals analysis which would require reversal.

Regarding Bliss' claim that the Court of Appeals impermissibly relied upon testimony of an expert witness which embraced an ultimate fact or conclusion of law, we agree with the Court of Appeals that there was no error in its admission, but not only for the reason that no specific objection was made at trial. It is true that defendant never made a specific objection to the testimony on the grounds now asserted, see MRE 103(a)(1); *People v Worrell,* 111 Mich App 27, 38-39; 314 NW2d 516 (1981); however, even if the objection had been made at trial there was no basis on the record for sustaining it.

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it

[6] Bliss also finds error in the trial court's reliance upon the testimony of defendant's expert witness, which allegedly occurred after the motion for directed verdict. See GCR 515.1. We presume that defendant Bliss is referring to the testimony of its project engineer, referred to several times by the Court of Appeals in its analysis of plaintiff's prima facie case. See *Downie,* fn 5 *supra,* pp 732, 733. However, we note that the portions of that witness' testimony relied upon by the Court of Appeals occurred prior to defendant's directed verdict motion. Therefore, we find no basis for alleging error.

embraces an ultimate issue to be decided by the trier of fact." MRE 704; FRE 704. See *People v McClinton Robinson,* 417 Mich 231; 331 NW2d 226 (1983); *Ruddock v Lodise,* 413 Mich 499; 320 NW2d 663 (1982).

That rule is consistent with prior Michigan common law. See Committee Note, MRE 704.

"The function of the expert witness is to supply expert testimony. This includes, when proper foundation is laid, opinion evidence. This opinion evidence may even embrace ultimate issues of fact. * * *

"What the opinion of an expert does not yet extend to is the creation of new legal definitions and standards, and legal conclusions." *In re Powers Estate,* 375 Mich 150, 172; 134 NW2d 148 (1965); *Brown v Unit Products Corp,* 105 Mich App 141, 152; 306 NW2d 425 (1981).

The project engineer's statement to which defendant Bliss apparently objects[7] was in response to the question,

"Is there any way to design [a safety stop pin and nut] so if it failed, it wouldn't cause an unexpected cycle of the press?"

Mr. Lewis responded,

"Well, my philosophy has been, as a professional

[7] In response to the Court of Appeals finding that Bliss' objection was not specific enough, and that its objections had referred to the question of competency only, Bliss presents the following statement by counsel as evidence of its objection to the expression of *legal* conclusions by the expert:

"I guess I want to object at this time, if we are going to get into what it sounds like, may or may not be a philosophy regarding the use of presses."

As noted in text, *infra,* the "philosophy" to which the expert had referred was one related to his professional opinion that "anything mechanical will wear," and that, therefore, hands should be kept out of the presses. This was no "legalistic philosophy," as alleged by defendant.

philosopher, that anything mechanical will wear, and anything mechanical will fatigue. And therefore, I subscribe to the philosophy of no hands in the press."

We find nothing objectionable about this statement. Likewise, we do not find that subsequent statements by Mr. Lewis in any way attempted to create a new legal definition or standard. For example, although it embraced an ultimate issue, the following expert opinion did not constitute expression of a legal standard: "a proper warning for the benefit of the operator, his or herself, would constitute a caution that hands should not be placed near the work point, when there was a possibility the press might operate." The admissibility of such a statement should not be questioned merely because the determination of liability may turn on whether the jury believes or disbelieves that opinion. See *People v Robinson, supra,* pp 234-235; *Thon v Saginaw Paint Mfg Co,* 120 Mich App 745, 751; 327 NW2d 551 (1982). Therefore, the statements by Mr. Lewis were admissible and were properly relied upon by the Court of Appeals in its affirmance of the trial court's denial of the defendant's motion for directed verdict.

### III

Plaintiff appeals the evidentiary ruling of the Court of Appeals to the effect that testimony concerning the warning tags which Bliss installed after 1965, but before plaintiff's injury, was impermissibly admitted. Plaintiff maintains that such evidence was legally admissible and that possible prejudice to the defendant provided an insufficient basis for reversal and remand where defendant made no meaningful objection to the testimony at trial.

Testimony regarding Bliss' use of warning tags

after 1965 was elicited several times throughout the trial. The first instance was during cross-examination of Mr. Lewis, a representative of Bliss. Plaintiff's counsel posed the question,

"Since the time of sale of this press in 1961, you have changed your method of dealing, and in 1965, you began putting warnings on the presses to the operators?"

Bliss' objection to this line of questioning was sustained. The second explicit reference to the change in approach came during the cross-examination of Harry Burke, a retired engineer from Bliss.[8] At that point, defendant's objection was overruled and Mr. Burke was allowed to testify:

"My recollection of that change is about 1965, '66, in that area, where we began putting a warning tag on the press to indicate to operators not to place their hands into the point of operation without some type of safety devices that should be in use for that type of operation."

Finally, a third reference to the use of warning tags was made spontaneously by defendant's expert witness, Joseph Schwalje,

---

[8] "*Q.* You were present and working at Bliss Press in [1961], when this press that Mrs. Downie was operating at the time of her injury was manufacturered [sic] and sold?

"*A.* That's correct.

"*Q.* At that time, were there any notations of danger or instructions for safety use imprinted or attached to the press, for the benefit of the operator? I mean by Bliss at the time of sale?

"*A.* You are describing some type of tag on the press itself for the operator?

"*Q.* Yes.

"*A.* Not to my knowledge.

"*Q.* Before Mrs. Downie's injury in December of 1975, during your time with Bliss, did you make any changes in that regard? That is, with regard to the—

"*Mr. Exelby [defense counsel]:* Your Honor, I object to this whole line of questioning. The issue in this case is: A press is manufactured and shipped in 1961."

"And yet, this very day, power press manufacturers are putting warnings on presses; * * *. They're put there so you don't ask questions that you are asking right now, very frankly."

The Court of Appeals held:

"The admission into evidence of the tags attached to presses manufactured by Bliss after 1965 was so highly prejudicial as to deny Bliss a fair trial."[9] *Downie v Kent Products,* 122 Mich App 722, 737; 333 NW2d 528 (1983).

We do not agree.

Generally, evidence of repairs, changes in conditions, or precautions taken after an incident is not admissible as proof of negligence or culpable conduct. *Smith v E R Squibb & Sons, Inc,* 405 Mich 79, 92; 273 NW2d 476 (1979); *Crews v General Motors,* 400 Mich 208, 232; 253 NW2d 617 (1977); *Denolf v Frank L Jursik Co,* 395 Mich 661, 667; 238 NW2d 1 (1976); *Judis v Borg-Warner Corp,* 339 Mich 313, 325; 63 NW2d 647 (1954); *Phillips v J L Hudson Co,* 79 Mich App 425, 426; 263 NW2d 3 (1977). Michigan Rule of Evidence 407 articulates this basic rule of Michigan common law:

"When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

[9] While the Court of Appeals incorrectly referred to the admission of "the tags," rather than the testimony concerning the tags, we do not find a significant difference between the two types of evidence which would require an alternate analysis or conclusion.

Likewise, § 2946(3) of 1978 PA 495 states the same rule in the context of products liability actions, specifically:

> *"Evidence of a change in the* philosophy, theory, knowledge, technique, or procedures of or with regard to the manufacture, construction, design, formula, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, *warning,* instructing, marketing, advertising, packaging, or labeling made, learned, *placed in use or discontinued after the event of death or injury to person or property shall not be admissible in a product liability action to prove liability."* MCL 600.2946(3); MSA 27A.2946(3) (emphasis added).

The question presented here is whether the words "after an event," in MRE 407, and "after the event of death or injury," in § 2946(3), operate to require exclusion of the testimony at issue in this case. Representatives of Bliss testified regarding Bliss' practice, beginning in 1965, of adding warning tags to its presses. The press in this case was purchased in 1961; the injury in question occurred in 1975. Plaintiff argues that, because the evidence relating to the later use of warning tags referred only to the years 1965-1975, it was not "subsequent" in that it did not occur "after the event" or "after the event of * * * injury"—namely the 1975 accident. Given the plain language of MRE 407 as clarified by MCL 600.2946(3); MSA 27A.2946(3), we agree with this interpretation.

The specific wording of MRE 407 is somewhat ambiguous as to whether the relevant "event" was the sale of the machine or the accident. Defendant argues that the sale and delivery of the press was crucial to plaintiff's theory of negligence. The negligence question ultimately presented to the jury

was one grounded in failure to warn. As the Court of Appeals noted, plaintiff's counsel argued repeatedly throughout the trial "that the delivery of the press, in 1961, without a warning tag or placard affixed to it was *the* breach of duty" that amounted to negligence on the part of Bliss. *Downie, supra,* p 736.[10] Clearly, testimony regarding the addition of such tags to the machines beginning in 1965 was subsequent to the alleged negligent event of failing to install warning tags in 1961. If the relevant event under MRE 407 were the sale and delivery of the machine, then the evidence would be inadmissible.

However, MCL 600.2946(3); MSA 27A.2946(3) commands a different result, in that it specifically refers to "the event of * * * *injury*" (emphasis added) as the relevant event. Since the statute does not conflict with the evidentiary rule, we read them together and conclude that only those remedial measures taken after the event of injury or death in question will be inadmissible.

MRE 407 is identical with Federal Rule of Evidence 407. The Federal Advisory Committee Notes explain that there are two grounds for the rule. The first has its roots in relevancy; the rule rejects the automatic conclusion that "because the world gets wiser as it gets older, therefore it was foolish before." *Hart v Lancashire & Y R Co,* 21 LTR (ns) 261, 263 (1869),[11] cited in Federal Advisory Committee Notes.

---

[10] Although the adequacy of a warning letter sent out by Bliss in 1975 also became an issue during the course of the trial, it did not form the basis of the plaintiff's negligence count.

[11] "Such evidence is said to be irrelevant because it is capable of explanations equally as plausible as an admission by conduct of pre-accident neglect of duty. If relevancy were the only criteria, Professors Wigmore and McCormick both point out that such evidence would meet the usual standards of relevancy." *Denolf, supra,* p 667.

Regarding the relevancy of the evidence at issue in this case, plaintiff's counsel argued that it should be admitted as evidence of the capabilities of Bliss' engineers to appreciate the safety problems with

The more important ground for excluding this type of evidence "rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." Advisory Committee Notes, FRE 407. McCormick, Evidence (3d ed), § 275; 2 Wigmore, Evidence, § 283. "[E]xclusion under the rule restates a basic tenet which has long been accepted in Michigan. It encourages persons to improve their products, property, services and customs without risk of prejudicing any court proceeding and consequently delaying implementation of improvements." *Smith, supra,* p 92. See *Denolf, supra,* p 667; *Phillips, supra,* pp 426-427.

However, the subsequent repairs exclusion is not without its critics. Several commentators have argued that the "social policy" of encouraging repairs has little basis in fact, that in the modern world of products liability actions against large corporations, few, if any of such potential defendants, will be encouraged to, or discouraged from, undertaking safety measures on the basis of a rule of evidence alone. See 2 Weinstein, Evidence, ¶ 407[02]; Schwartz, *The Exclusionary Rule on Subsequent Repairs—A Rule in Need of Repair,* 7 Forum 1, 7 (1971). While we do not question the application of the rule in the case where remedial measures are taken in response to the accident in question, we decline to extend the coverage of the rule to the situation at bar merely on the basis of a social policy which has questionable application to this set of facts. It goes without saying that market forces (the desire to prevent future costly lawsuits) and a manufacturer's duty to warn, generally, see *Comstock v General Motors,* 358 Mich

the machine and make any necessary changes prior to the injury in question.

163; 99 NW2d 627 (1959), will operate to encourage the adoption of appropriate remedial measures. The proposed extension of an evidentiary rule beyond its intended meaning will not provide any significant further encouragement of safety activities.

This conclusion is in keeping with the decisions of the Fifth Circuit Court of Appeals, which have also construed FRE 407 literally in applying it to this situation. *Arceneaux v Texaco, Inc,* 623 F2d 924 (CA 5, 1980); *Foster v Ford Motor Co,* 621 F2d 715 (CA 5, 1980); *Ramos v Liberty Mutual Ins Co,* 615 F2d 334 (CA 5, 1980), *cert den* 449 US 1112 (1981); *Rozier v Ford Motor Co,* 573 F2d 1332 (CA 5, 1978). Likewise, state court decisions on this question are also in agreement with our conclusion, although they construe individual state versions of FRE 407. See, *e.g., Schaeffer v General Motors Corp,* 372 Mass 171; 360 NE2d 1062 (1977); *doCanto v Ametek, Inc,* 367 Mass 776; 328 NE2d 873 (1975); *Caprara v Chrysler Corp,* 52 NY2d 114; 436 NYS2d 251; 417 NE2d 545 (1981); *Incollingo v Ewing,* 444 Pa 263; 282 A2d 206 (1971).

Thus, relying on the plain language of MRE 407 and MCL 600.2946(3); MSA 27A.2946(3), we find the rule to be inapplicable to the situation in this case—where remedial measures were undertaken after the sale of a machine but before the injury in question. The rule was written to apply only to the situation where such measures are taken after the accident or injury in question.

Therefore, the trial court's exclusion of Mr. Lewis' testimony was in error. Admission of the testimony of Mr. Burke was not violative of MRE 407, and the spontaneous reference of Mr. Schwalje to the general practice in the industry of installing warning tags was also properly admit-

ted. The decision of the Court of Appeals on this issue is reversed.

Plaintiff also argues that the testimony regarding the subsequent use of warning tags should be held admissible under the "feasibility" exception to the rule. Given our finding that MRE 407 did not require exclusion of the evidence we do not reach this question. We also do not reach plaintiff's argument that there can be no error because defendant's counsel failed to sufficiently object to the questionable testimony. Likewise, we do not reach the issue whether the evidence was material.

## IV

The final question presented for our consideration in this case is the most significant: Does the adoption of the doctrine of comparative negligence in this state affect a defendant-manufacturer's ability to obtain contribution from a negligent employer who is already liable to the plaintiff-employee for workers' compensation benefits?[12] In light of the statutory scheme governing workers' compensation and despite the equitable arguments advanced on the part of the manufacturer, to which we are sympathetic, we must conclude that any application of comparative fault principles in this context must await legislative action. In the interests of efficiency, stability, and simplicity, we decline to inject common-law principles into the wholly statutory recovery scheme which was estab-

[12] The answer to this question results in a finding of error as to all three challenged actions by the trial court: the inclusion of Kent on the special verdict form, the allowance of the amended complaint and the reduction of the workers' compensation lien. Therefore, it is unnecessary to reach the procedural and constitutional arguments presented to the Court as evidence of errors unrelated to the more fundamental issue.

lished by the Legislature to govern all actions arising out of injuries in the workplace.

Professor Larson has noted that the question presented here is "[p]erhaps the most evenly balanced controversy in all of compensation law * * *." 2A Larson, Workmen's Compensation Law, § 76.11. We agree with his statement that "[e]ach side to the controversy has an argument in its favor which, considered alone, sounds irresistible." *Id.* Kent, the employer, and its insurer maintain that, pursuant to § 827(5) of the WDCA, MCL 418.827(5); MSA 17.237(827)(5), they have a right to full reimbursement, out of plaintiff's recovery against Bliss, for the workers' compensation benefits paid and payable to the plaintiff. Any reduction of that reimbursement based on its alleged negligence in causing the injury, would be violative of the exclusive remedy provision of the WDCA, MCL 418.131; MSA 17.237(131). Bliss, on the other hand, argues that, just because the accident in this case happened to have been work related, it should not be forced to pay 100% of plaintiff's recovery when Kent has been found liable for 45% of plaintiff's injuries, especially in light of the judicial and legislative adoptions of the doctrine of comparative negligence.

The exclusive remedy provision of the WDCA provides, quite simply, that "[t]he right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer." MCL 418.131; MSA 17.237(131). See *Solakis v Roberts,* 395 Mich 13; 233 NW2d 1 (1975). In *Husted v Consumers Power Co,* 376 Mich 41, 53; 135 NW2d 370 (1965), we referred to this exclusive remedy provision as the employer's *quo,* received in exchange for his *quid.* We noted that the "primordial intent [of the Legislature in enacting the WDCA] was that the *quo* to be received by the

employer in return for his *quid* would be outright and absolute immunity from liability (except as provided in the act) stemming from each compensable injury." The exclusivity provision is an example of the importance which the drafters of workers' compensation laws, generally, placed on simple, automatic remedies. Larson, *supra,* § 76.93. The provision may be equated with the doctrine of strict liability, in that the employee is guaranteed some limited compensation for injury from the employer, while the employer rests assured that, in the ordinary case, it is immune from further suit by the employee based on the same accident. "The act was originally adopted to give employers protection against common-law actions," while assuring adequate compensation of the injured employee. *Lahti v Fosterling,* 357 Mich 578, 585; 99 NW2d 490 (1959).

In addition to the exclusivity provision, another aspect of the workers' compensation scheme militates in favor of retaining the status quo regarding recovery in these types of cases. Although the act requires the workers' compensation claim to be the employee's exclusive remedy against the *employer,* the act also provides that receipt of benefits does not constitute an election of remedies. It permits third party suits, such as that brought against Bliss, which arise out of the same workplace accident. MCL 418.827(1); MSA 17.237(827)(1). After deduction for expenses, any recovery from such a "third party" is then used to reimburse the employer "for any amounts paid or payable under [the] act * * *." MCL 418.827(5); MSA 17.237(827)(5). Even earlier versions of the WDCA afforded the employer who had paid workers' compensation benefits a right to enforce the liability of a third party wrongdoer to the employee. 1915 CL 5468. The employer's right of

recovery was provided through subrogation without assignment, and the employer could bring suit in his own name or that of his workers' compensation insurer. *Michigan Employers' Casualty v Doucette,* 218 Mich 363, 365; 188 NW 507 (1922).

The current version of the reimbursement provision "creates a statutory lien in favor of the [workers' compensation] carrier. * * * [T]his lien is to be paid before any excess recovery is to be paid to the employee." *Ohio Farmers Ins Co v Neff,* 112 Mich App 53, 57; 315 NW2d 553 (1981). It was the entitlement of Kent or Home Indemnity to this reimbursement of benefits which the trial court order reduced in an amount proportional to Kent's negligence, as indicated by the jury on the special verdict form.

The reimbursement provision allows the employee to recover the benefits provided by the WDCA or the damages recoverable at common law, but not both. Thus, the employee is permitted "to retain the best of both schemes." *Great American Ins Co v Queen,* 410 Mich 73, 92; 300 NW2d 895 (1980). The reimbursement provision does not preclude the full reimbursement of an employer who was also negligent. We agree with the Court of Appeals assessment that the reimbursement section

"provides clearly and unambiguously that the employer or carrier is to be reimbursed from 'any recovery' against a third party for 'any amounts' paid or payable to the employee under the WDCA as of the date of the recovery. The statute speaks for itself; there is no room for judicial interpretation or construction."

*Land v The George Schmidt Co,* 122 Mich App 167, 170; 333 NW2d 30 (1982). Accord, *Schweitzer v Elox Division of Colt Industries,* 70 NJ 280, 287; 359 A2d 857 (1976). Thus, the exclusivity provision

of the WDCA, in combination with the reimbursement scheme, applicable in the case of a third party suit, is an aspect of the WDCA which is so integral to the workers' compensation system in this state that it may be said to overshadow the ordinary common-law recovery principles which otherwise apply. See *Douglas v Robbins & Myers,* 505 F Supp 765, 768 (WD Mich, 1980).

The question of the employer's contribution in this case arises, in part, because of the special verdict form which allowed the jury to apportion negligence to the employer Kent, and because the plaintiff was allowed to amend her complaint after the verdict, adding Kent and Home Indemnity as defendants. Because Kent was brought into this action through plaintiff's amended complaint, rather than through impleader by Bliss, we could dispose of the larger questions merely on the basis of the exclusive remedy provision. Clearly, it is impermissible for an employee in this context to name her employer as a defendant in a suit arising out of a work-related injury for which she has already received workers' compensation benefits. However, since the amended complaint was apparently in response to the jury's finding on the special verdict form, which assessed Kent's negligence according to the principles of comparative fault, we will move beyond the exclusivity question to the more fundamental problem: Had Kent and Home Indemnity been impleaded by Bliss, was the jury's assessment of Kent's negligence, and the apportionment of the damages which followed, permissible? - -

There is a substantive right to contribution on the part of a nonintentional tortfeasor who has paid more than his pro-rata share of the common liability. MCL 600.2925a(1), (2); MSA 27A.2925(1)(1), (2); *Sziber v Stout,* 419 Mich 514;

358 NW2d 330 (1984); *Caldwell v Fox,* 394 Mich 401, 417-420; 231 NW2d 46 (1975); *Moyses v Spartan Asphalt Paving Co,* 383 Mich 314, 334; 174 NW2d 797 (1970).[13] Under the contribution statute, there must be a "common burden of liability in tort" shared among the tortfeasors. *O'Dowd v General Motors Corp,* 419 Mich 597, 605; 358 NW2d 553 (1984).

However, because of the exclusive remedy provision of the WDCA, this general right to contribution is limited when a third party attempts to implead an employer who has already settled a workers' compensation claim with the plaintiff-employee. Following the majority rule in the United States, we held in *Husted v Consumers Power Co, supra,* p 56, that "if [the employee] could not sue his employer * * *, and we know he could not, [the employer and original defendant] cannot be joint tortfeasors by law. [The original defendant] therefore cannot sue [the employer] for contribution should it be held to respond to the plaintiffs in damages." In the words of the United States District Court for the Western District of Michigan, interpreting the *Husted* decision in 1980,

"for a cause of action in contribution to be present, the employer would have to have some further liability to the plaintiff arising out of the injury. This, however, would violate the exclusive remedy provision of section

---

[13] This rule has evolved gradually over the years:

"At common law, contribution was not, as a general rule, recoverable among or between joint wrongdoers or tortfeasors. The Legislature partially abrogated the common-law bar by adopting the 1939 Uniform Contribution Among Tortfeasors Act which provided for contribution among or between 'joint' tortfeasors. This Court abolished remnants of the common-law rule in *Moyses [supra,* pp 329, 334]." *O'Dowd v General Motors Corp,* 419 Mich 597, 603; 358 NW2d 553 (1984).

Subsequently, MCL 600.2925a; MSA 27A.2925(1) was also adopted by the Legislature.

131 of the [WDCA]. Under the workers' compensation law, *an employer has no common liability,* and is not a joint tortfeasor with the defendant." *Douglas, supra,* p 769 (emphasis added). See *Venters v Michigan Gas Utilities Co,* 493 F Supp 345 (WD Mich, 1980).

The disallowance of contribution in this situation, is generally premised on the fact that the employer's liability is purely statutory, pursuant to the WDCA. See *Jordan v Solventol Chemical Products, Inc,* 74 Mich App 113, 117-118; 253 NW2d 676 (1977); *McLouth Steel Corp v A E Anderson Construction Corp,* 48 Mich App 424, 430; 210 NW2d 448 (1973). Because the workers' compensation scheme is in derogation of the common law, and totally outside it, *Solakis, supra,* p 20, quoting *Tews v C F Hanks Coal Co,* 267 Mich 466, 468-469; 255 NW2d 227 (1934), there is no "common liability" in tort between the third-party defendant and the employer—a prerequisite to contribution. MCL 600.2925a(1), (2); MSA 27A.2925(1)(1), (2).

Although we have recognized an exception to this general rule in the case of an express or implied indemnity agreement between the original defendant and the employer, we have also emphasized the application of the rule when no such agreement is alleged. *Dale v Whiteman,* 388 Mich 698, 708; 202 NW2d 797 (1972), held that, although the WDCA bars "any action against an employer by the employee or one which is derivative from [the employee's] claim," it does not bar a claim based on an implied indemnity agreement between the employer and the third party. See *Minster Machine Co v Diamond Stamping Co,* 72 Mich App 58, 64-65; 248 NW2d 676 (1976). *Cf. Langley v Harris Corp,* 413 Mich 592; 321 NW2d 662 (1982) (insufficient contractual relationship upon which to establish an obligation to indemnify). No such indemnity theory has been argued by Bliss in this

case, nor would one be applicable, since Bliss cannot claim to be without fault. See *Dale, supra,* p 706. Therefore, we do not address any possible application of the indemnity exception.[14]

In spite of these former pronouncements, Bliss argues that the adoption of pure comparative negligence in this state in 1979 implicitly abrogated the rule which would allow one tortfeasor, the original defendant, to be held liable for the entire award when responsible for only a portion of the negligence. The doctrine of pure comparative negligence was adopted in place of contributory negligence in *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979).[15] Basically, contributory negligence had operated as a total bar to recovery when a plaintiff was at all negligent; comparative negligence, by contrast, apportions responsibility in proportion to fault. *Id.,* p 650, fn 1. The comparative negligence approach "most nearly accomplishes the goal of a fair system of apportionment of damages." *Id.,* p 660.

Even prior to this Court's decision in *Placek,* the Legislature had modified the contributory negligence doctrine in products liability actions to allow reduction of damages in proportion to the amount of negligence attributed to the plaintiff. MCL

---

[14] There are other exceptions to the exclusive remedy rule which are also irrelevant here. See, generally, *Exceptions to the Exclusive Remedy Requirement of Workers' Compensation Statute,* 96 Harv L Rev 1641 (1983). In Michigan, as the Court of Appeals has noted,

"*The exceptions* to the exclusive remedy provision for actions which did not arise out of the employer-employee relationship and for actions in which plaintiff is not seeking to recover damages for personal injuries *are derived from the language of the statute.*" *Genson v Bofors-Lakeway, Inc,* 122 Mich App 470, 478; 332 NW2d 507 (1983) (emphasis added).

Therefore, the existence of other exceptions has no bearing on our decision in this case, since the requested exception would fly in the face of the current statutory language.

[15] *Placek* adopted the opinion of Justice WILLIAMS in *Kirby v Larson,* 400 Mich 585; 256 NW2d 400 (1977).

600.2949; MSA 27A.2949. More recently the Legislature established that the doctrine of comparative negligence applies generally among tortfeasors. MCL 600.2925b; MSA 27A.2925(2) (as amended by 1982 PA 147).

Thus, were this an ordinary products liability case and Kent an ordinary third-party tortfeasor and not the plaintiff's employer, these principles would apply to validate the actions taken by the trial court in submitting the special form to the jury and holding Kent liable for its portion of the damages. However, as the United States District Court noted when presented with the same argument prior to passage of 1982 PA 147, *Placek* "concerned only the apportionment of fault between the plaintiff and the defendant. *It did not involve* a third-party complaint or *worker's compensation* * * *." *Venters, supra,* p 349. (Emphasis added.) Therefore, *Placek* does not dictate a result in this case.

The exclusive remedy and reimbursement provisions of the WDCA provide a necessary backdrop against which this decision is made. While the equities in favor of Bliss are strong, we choose to follow the precedent established in *Husted.* The basic integrity of the workers' compensation scheme must be preserved even in the face of the recent judicial and legislative adoptions of the doctrine of comparative negligence.

Other courts have reached the same result in considering Michigan law. In *Cutter v Massey-Ferguson,* 114 Mich App 28; 318 NW2d 554 (1982), the defendant argued that an employer who has already paid workers' compensation benefits to the plaintiff may be joined as a third-party defendant in a products liability action for the purpose of determining the percentage of causal negligence attributable to the employer so as to reduce ac-

cordingly the primary defendant's liability to the plaintiff. *Id.,* p 32. The Court of Appeals noted that because of the exclusive remedy provision, the employee could not assert a claim against his employer. It held that "the concept of joint and several liability has not been abrogated by adoption of comparative negligence in *Placek,*" and that *Placek* did not require allocation of fault in such a case. *Id.,* p 37.[16] See *Caldwell v Cleveland-Cliffs Iron Co,* 111 Mich App 721, 724-725; 315 NW2d 186 (1981). We agree.

Likewise, several federal district court decisions are also in accord. *Douglas, supra, McPike v Die Casters Equipment Corp,* 504 F Supp 1056 (WD Mich, 1980), and *Venters, supra,* all uphold the preeminence of the employer's immunity under the WDCA in cases where contribution is sought by a defendant from a negligent employer. Those federal district judges agreed that *Placek* did not affect the substantive rights of employers as established by the Legislature under the WDCA. "Any such adjustment [of the workers' compensation balance] must be undertaken openly and forthrightly by the Michigan legislature." *Douglas, supra,* p 769.

We recognize that other jurisdictions have adopted different approaches to the problem of reconciling comparative negligence principles with

---

[16] The Court of Appeals was aware of the equitable arguments on behalf of the products liability defendants:

"[W]e are concerned that in some cases negligent employers appear to escape responsibility at the expense of manufacturers whose product liability exposure is relatively less in terms of fault than that of the employer." *Cutter, supra,* p 37, fn 14.

We also recognize the policy implications of our decision to place priority upon the workers' compensation scheme established by the Legislature. However, we highly encourage the Legislature, in light of the common-law evolution of comparative negligence principles and the changed legal climate in which work-related injuries now occur, to amend the WDCA to better balance the equities. In the absence of such legislative action, however, we decline to upset the current balance.

workers' compensation statutes. See Larson, *supra,*
§§ 76.20-76.39; Larson, *Third-Party Action Over
Against Workers' Compensation Employer,* 1982
Duke L J 483, 489-499.[17] We maintain the majority
rule enunciated in *Husted,* however, despite *Pla-
cek's* injection of comparative negligence into the
applicable legal formula.

We refuse to abandon, as did the Minnesota
Supreme Court,[18] the current prerequisite to con-
tribution: "common liability in tort." While we
agree with that court that "[c]ontribution is a
flexible, equitable remedy designed to accomplish a
fair allocation of loss among parties," *Lambertson*
v *Cincinnati Corp,* 312 Minn 114; 257 NW2d 679
(1977); *O'Dowd, supra,* p 607, we cannot agree that the
principle of fairness, alone, should operate to allow
abrogation of the employer immunity provided by
the WDCA.

As Professor Larson has noted, premising the
rule upon fairness to the original defendant "ig-
nor[es] the fact that * * * the employer[] has
already made concessions and assumed liabilities
to the employee, for which his immunity was the
*quid pro quo."* Larson, *supra,* 1982 Duke L J, p
539. Additionally, such an approach sacrifices sim-
plicity and efficiency. *Id.* While our position may
be characterized as "pro-employer," Larson, *supra,*

[17] The approaches vary. At one extreme is one which would make
an employer liable for damages proportionate to the full extent of the
negligence, without limitations. See, *e.g., Skinner v Reed-Prentice
Division Package Machinery Co,* 70 Ill 2d 1; 374 NE2d 437 (1978), *cert
den* 436 US 946 (1978). At the other extreme is a proposal which
would make workers' compensation the sole source of an employee's
recovery, see *Final Report of the Commerce Department Task Force
on Products Liability and Insurance,* 43 Fed Reg 14,612 (1978), cited
in Stahle, *Contribution From a Negligent Employer: A Problem in
Search of a Solution,* 32 Drake L Rev 945, 953 (1982-1983).

[18] A moderate position has been adopted by the Minnesota Supreme
Court, which took a result-oriented approach. In *Lambertson v Cin-
cinnati Corp,* 312 Minn 114; 257 NW2d 679 (1977), that court estab-
lished a rule which would allow contribution from an employer in
this situation, but only up to the amount of workers' compensation
benefits paid or payable.

§ 76.91(a), it should be noted that both Bliss and Kent are employers and thus benefit generally from this rule. Moreover, the rule is also most in keeping with our present legislative scheme.

We agree that it is only logical for both the manufacturer and employer to be held responsible for an employee's injury if they have shared in its causation. The Legislature might be advised to provide a means for reducing the employer's lien on third-party recoveries in certain cases. However such a change would affect the "bargain" which has been struck between employers and employees, generally, and would involve the weighing and balancing of all interests. The Legislature is far more equipped than we to deal with such a major transformation of the workers' compensation system. As the Alaska Supreme Court concluded when presented with the same question,

"there is a fair and substantial relationship between the legislative objective of providing guaranteed, expeditious compensation to the injured employee and the limitation on the employer's total liability regardless of its percentage of fault, even though that limitation has the effect of denying the third party tortfeasors the right to *pro rata* contribution from the employer." *Arctic Structures, Inc v Wedmore,* 605 P2d 426, 437-438 (Alas, 1979).

In light of this discussion, the inclusion of Kent on the special verdict form and the addition of Kent and Home Indemnity to the plaintiff's amended complaint, as well as the reduction of the reimbursement to which Kent and Home Indemnity were entitled, amounted to error on the part of the trial court. On remand, the trial court shall not permit the jury to consider Kent's negligence for the purpose of allowing any reduction of the statutory reimbursement of Kent or Home Indemnity by

amounts perceived to be proportional to Kent's liability; nor shall it allow the reduction of such statutory reimbursement.

The opinion of the Court of Appeals is affirmed in part, and reversed in part. We remand for a new trial in conformance with this opinion.

WILLIAMS, C.J., and KAVANAGH, LEVIN, RYAN, CAVANAGH, and BOYLE, JJ., concurred with BRICKLEY, J.

BOYLE, J. *(concurring).* While I agree with the reasoning of the opinion of the Court, that MRE 407 does not preclude evidence of measures taken after the sale and delivery of a product, but before the injury in question, provided they are otherwise relevant, relevance was not here shown.

The plaintiff's theory of liability was delivery of the press in 1961 without a warning tag or placard. While warnings later given might have been relevant to defendant's knowledge of the danger in 1961, plaintiff did not establish a foundation for this line of inquiry. Hence I agree that admission of this evidence was erroneous and so prejudicial as to require a reversal.

I concur in the remainder of the opinion.